### NORTHERN ASSURANCE CO. v. SAMUELS & JORDT.

#### No. 702.

**1.    Fire Insurance—Waiver of Defects in Proofs of Loss.**

Where the insurer fails to notify the insured specifically of such defects in proofs of loss as may be corrected, he waives the right to object to the proofs on such grounds.

**2.    Same—Sufficiency of Proofs.**

Where the defendant insurance company, after notice to produce the original proofs of loss furnished it by plaintiff, refuses and fails to do so, without assigning any reason therefor, and the plaintiff testifies from memory as to their contents, the defendant cannot complain that the contents are not sufficiently proved.

**3.    Same—Secondary Evidence Not Admissible.**

Where the defendant company, after notice to produce the original proofs of loss furnished it, fails to do so, without assigning any reason therefor, it is proper to exclude evidence by defendant's agent as to defects in such proofs.

**4.    Same—Waiver of Appraisement.**

Where an insurer demands an appraisement of a fire loss, but fails to name an appraiser and to appear at the time and place designated, he thereby abandons his demand, and has no right to make a subsequent demand for such appraisement.

**5.    Same—Evidence—Transfer of Policy.**

Evidence of the transfer of a policy after institution of suit would not tend to show that the fire was caused by the procurement or consent of the insured.

**6. Practice—Bill of Exceptions.**

Where a bill of exceptions to the exclusion of an answer of a witness does not disclose what the answer would have been, it cannot be determined that the ruling was prejudicial.

APPEAL from Bexar. Tried below before Hon. S. G. NEWTON.

*Webb & Finley,* for appellant.

No brief for appellees reached the Reporter.

NEILL, ASSOCIATE JUSTICE.—The appellees, plaintiffs below, sued appellant on a fire-insurance policy for one thousand dollars, and recovered judgment therefor. This appeal is from the judgment.

On the 7th day of December, 1893, the appellant company by its policy of that date insured Samuels & Jordt for the term of one year from said date against all direct loss or damage by fire, with certain exceptions not necessary to mention, to an amount not exceeding one thousand dollars, on a certain stock of goods, wares and merchandise of San Antonio, Texas.

The policy among other provisions contained the following:

"1st. This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having thus been determined, the sum for which this company is liable pursuant to this policy, shall be payable sixty (60) days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild or replace the property lost or damaged with other of like kind and quality, within a reasonable time, on giving notice within thirty (30) days after the receipt of the proof herein required of its intention so to do.

"2d. This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; or if the interest of the insured in the policy be not truly stated herein.

"3d. This entire policy shall be void if the interest of the insured be other than unconditional and sole ownership.

"4th. If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the

same, stating the quantity and cost of each article and the amount claimed thereon; and within sixty (60) days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; also, changes to the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire.

"5th. The insured, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative.

"6th. In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expense of the appraisal and umpire.

"7th. This company shall not be held to have waived any provision or condition, or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty (60) days after the notice, ascertainment, estimate and satisfactory proof of the loss, herein required, have been received by this company, including an award by appraisers, when appraisal has been required.

"8th. This company shall not be liable for a greater proportion of any loss on the described property than the amount hereby insured shall bear to the whole insurance covering such property.

"9th. In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company.

"10th. This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, etc., as may be endorsed herein, and no official agent of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be made subject of agreement endorsed hereon or added hereto, and as to such provisions, no officer, agent, shall have such power or be deemed or held to have waived such provisions unless such waiver, if any, shall be written upon or attached hereto, nor shall any permission affecting the insurance exist, or be claimed by the insured, unless so written."

A loss occurred by fire of the property insured on the 17th day of December, 1893. At the time of the fire the property covered by the policy sued on was also insured in two other companies for amounts aggregating $1500. The value of the goods at the time of the loss. was about $4000. On the morning after the fire Mr. Jordt, a member of the firm, notified the appellant company through its local agent, and telegraphed the home office of the company of the loss. A few days afterwards Mr. Hay, an adjuster of the company, arrived in San Antonio, went over the store which contained the goods and directed Mr. Jordt to go over the goods, straighten and assort them as much as. possible, telling him at the time he would be back. But he never came back. The goods were straightened and assorted by Jordt, so their condition could be seen, and remained in that condition for sixty-five days, subject to appellant's inspection, during which time Mr. Jordt, according to his testimony, repeatedly asked the company to come and make an appraisement, which they never did.

Jordt prepared written proofs of the loss, showing it to be about $3000, on one of the company's blanks and sent them to the appellant, who received such proofs on the 10th day of February, 1894. In their petition appellees alleged such proofs to be in the possession of the appellant and notified it to produce them on the trial, or secondary evidence to prove their contents would be offered. On the trial plaintiff's counsel called upon defendant's counsel to produce the estimate of loss so furnished, which defendant's counsel refused to do. Whereupon the plaintiffs proved by Mr. Jordt, as well as he could recollect, the contents of such proofs of loss.

It does not appear from the evidence what defects, if any there were,. in the proofs of loss furnished by appellees were indicated or specified by appellant. It is true that Mr. Jordt testified: "I was served with notice calling my attention to certain defects which the company claimed were in the proofs of loss sent them," and that he had the notice served on appellees. But the notice was not introduced, nor is it in any way shown what defects were indicated. The proofs, though presumably in the hands of appellant's counsel, were not introduced.

On February 23, 1894, the appellant made a written demand on appellees for an appraisement of the property as it existed immediately after the fire, and set apart February the 24th, 2 o'clock p. m., as the time of appraisement, and designated their (appellees') store as the place. In this demand the appellant failed to name an appraiser.

Again, on March 16, 1894, the appellees were notified that appellant demanded an appraisement, under and by virtue of and in accordance with the terms and stipulations of the policy of insurance, and designated the 21st of March, 1894, at 11 o'clock a. m., at appellees' store, as the time and place of appraisement, and named Newt. M. Smith as the appraiser selected by the company to meet with a competent and disinterested appraiser selected by the appellees for the purpose of effecting

the appraisement·in accordance with the terms and conditions of the policy.

They were also notified to produce for inspection and examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if the originals were lost, together with all that remained imme-·diately after the fire.

On March 2, 1894, there was also a written demand made by appellant on appellees for all books of accounts, bills, invoices, and other vouchers or duplicates thereof, if originals are lost, and of all records kept by them, their agents or representatives, of the sale of any or all goods since the date of fire, to be delivered at the office of Messrs. Webb & Finley, not later than five o'clock p. m., March 2, 1894.

Mr. Hay, appellant's adjuster, knew that the damaged and undamaged goods were kept in appellees' store for sixty or·sixty-five days after the fire, awaiting his action. After this time the appellees had them sold at auction, and he was in the store a few moments at the auction sale. When he made the demand for an appraisement, he knew there could be no actual appraisement, from the fact that the goods had been sold. When he made the demand for the books, etc., appellees gave him a burned book, and some invoices, telling him that they only had a few.

The record fails to disclose any action of the court upon appellant's exceptions to plaintiff's petition which are complained of in the first and second assignments of errors as being overruled. Therefore such assignments cannot be further noticed.

The tenth, eleventh and twelfth assignments complain of the court's refusal to give certain special charges requested by appellant's counsel, all of which, though couched in different language, instruct a verdict for the defendant on account of supposed defects in the proofs of loss furnished by appellees, and their failure on the trial to prove the contents of such alleged proofs of loss.

It has been seen from the facts that it was not shown what defects, if any there were in the proofs of loss, were specified or objected to by appellant. No principle seems better settled than that "where there are defects in the proofs of loss, whether formal, substantial or indeed in any respect, which could have been supplied if specific objections had been made thereto by the underwriters, a failure on their part to object to the proofs upon that ground, or to point out the specific defect, or to call for the information omitted within a reasonable time, is considered a waiver, however defective, informal or insufficient such proofs may be. Wood on Fire Insurance, sec. 452, and authorities cited in note 1, page 962 of second edition of said work. "Proofs of loss," says the same authority, "are presumed to be required as a means of enabling the insurer to determine whether there has been a loss, whether the insured had the requisite insurable interest on the property, and whether it was a loss by any of the perils insured against, and the nature and extent of the loss, rather than as a means of enabling the insurer by sharp practice and knavish tricks to defeat its liability for the loss."

When, as seen from the facts in this case, the appellant was notified by plaintiff's petition to produce the proofs of loss upon the trial, and during the trial again called upon defendant's counsel to produce them, which they, without assigning a reason, refused to do, it comes with poor grace for the appellant to say that the contents of such proofs were not sufficiently proved. Even if the defects were not waived, such action of appellant would at least be strong presumptive evidence that the proofs were sufficient. For if they were not sufficient, their insufficiency could have been fully established by appellant's doing just what appellee requested it to do,—produce the originals.

After Mr. Hay had testified, "I identify the paper calling attention of Samuels & Jordt to certain defects in proofs of loss," he was asked by defendant's counsel, "What was the matter with the proofs of loss furnished to defendant, if any at all?" To which question plaintiffs objected because the evidence having shown the proofs of loss to be in defendant's possession, it could not offer secondary evidence of their contents without accounting for their non-production.

The objection was sustained, and the witness was not permitted to answer. We think that the ruling of the court was correct. Besides the bill of exceptions does not show what the witness would have answered. In the absence of such showing we cannot say that the answer would have been of advantage to appellant. Therefore it is not shown that appellant was prejudiced by such ruling, even though it should be held erroneous.

The demands for appraisement before mentioned were signed "Northern Assurance Co., by Gilbert Hay, Agt." In our opinion the evidence shows conclusively that the demand made on February 23, 1894, was abandoned by appellant. For neither its agent nor appraiser was, at the time and place specified in the demand, present, and a subsequent demand for an appraisement was made. Nor is there a particle of evidence tending to show that the appellees were not ready and willing to have the appraisement made in compliance with such demand. Having made a demand which was abandoned by it, and such abandonment not being caused by appellees, they had a right to consider the appraisement waived. Chapman v. Rockford Ins. Co., 28 L. R. A., 405. And if Gilbert Hay, as the agent of the company, had authority to make the demand, he could waive it after it was made. If he was not authorized to make it, no demand was made, for it was only attempted to be made through him. The appraisement being waived, appellant had no right to make the subsequent demand, and appellees' cause of action accrued sixty days after such waiver. Therefore, it was not error in the court to refuse to give the special charges asked by appellant, which in effect instructed the jury to find for defendant if they believed such demands for appraisement were made, and appellees failed to comply with them.

The issues as to whether or not W. Samuels was a member of the firm insured, and as to whether appellee Abe Samuels or any of them fired the building containing the goods, were fairly submitted to the jury in ap-

propriate charges.    Therefore the court did not err in refusing the special charges asked by appellant on these issues.    Nor was it error for the court to allow plaintiffs to file a trial amendment after their announcement of ready for trial.

Evidence of the transfer of the policy after institution of the suit would not tend to show that the fire was caused by the procurement or consent of the insured; and as it was offered for that purpose only, the court did not err in excluding it.

The statement of facts was filed after adjournment of the term of court at which the cause was tried, and, as the matters complained of in the sixteenth assignment are only found in such statement, they can not be considered as excepted to.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered October 30, 1895.