FIDELITY PHENIX FIRE INS. CO. v. SADAU. (No. 8195.)

(Court of Civil Appeals of Texas. Ft. Worth. May 15, 1915. Rehearing Denied June 19, 1915.)

1. INSURANCE ☞560 — FIRE INSURANCE — PROOF OF LOSS—FAILURE SPECIFICALLY TO INDICATE DEFECTS—WAIVER.

Where, to the proof of loss of household goods destroyed by fire, the insurer objected only in general terms that the list of items destroyed was unsatisfactory, and did not comply with the policy as to the furnishing of information of the property destroyed, and that the insurer could not recognize as correct the items or values, any defect in such proof of loss was waived by the insurer, for, to defend successfully on the ground that a proof of loss is defective or inaccurate, an insurer must specifically point out the defect in a reasonable time, and failure so to do is a waiver.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1393–1404; Dec. Dig. ☞560.]

2. INSURANCE ☞533 — FIRE INSURANCE — PROOF OF LOSS—UNREASONABLE DEMAND FOR BILLS.

Where a policy of fire insurance on household goods provided that upon loss the insured should furnish, as required, bills, invoices, etc., and where the insured, a man of small means, who could not read, had acquired some of the goods by gift and some by purchase in a number of places of residence, and had no bills and could not obtain them, the insurer could not successfully defend for the insured's failure to furnish such bills covering the destroyed goods upon its adjuster's demand, it being unreasonable to require him to obtain them under the circumstances, since a forfeiture will not be declared unless the policy expressly stipulates therefor, while its provision that the insured should produce bills, as required, implied that the duty should rest on him only if he had such bills.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1320; Dec. Dig. ☞533.]

3. INSURANCE ☞668 — FIRE INSURANCE — PROOF OF LOSS—DEFECTS—WAIVER—QUESTION FOR JURY.

In suit on a policy of fire insurance on household goods, whether insured filed the proof of loss required by the policy, and whether, if not, the default was waived by the insurer, held for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. ☞668.]

4. INSURANCE ☞669—FIRE INSURANCE—INSTRUCTION—CONFORMITY TO ISSUES.

In suit on a fire policy on household goods, where an issue was whether the insured had furnished the proof of loss required by the policy, an instruction that if the proof was defective, unless the filing of proper proof had been waived by the insurer, the jury should find for it, covered the issue fairly.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1771–1784; Dec. Dig. ☞669.]

5. INSURANCE ☞669—FIRE INSURANCE—INSTRUCTIONS—CONFORMITY TO ISSUES.

In suit on a fire policy on household goods, where an issue was whether the insured was guilty of fraud under the policy by overvaluation or excessive demand, an instruction that if the insured in his proof of loss listed, as destroyed, items not lost, or willfully overvalued items lost, to obtain an amount in excess of his actual loss, the fact was a defense, presented the issue fairly.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1771–1784; Dec. Dig. ☞669.]

6. INSURANCE ☞536 — FIRE INSURANCE — PROOF OF LOSS—WAIVER.

Where the insured fails to make the proof of loss required by his policy, there can be no recovery thereon, unless the insurer waives the defect.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1323; Dec. Dig. ☞536.]

7. INSURANCE ☞553 — FIRE INSURANCE — FRAUD—OVERVALUATION IN PROOF OF LOSS.

Where an insured owner of household goods destroyed by fire willfully presents, as proof of loss, a list of the goods destroyed, containing items not lost, or items overvalued, to defraud the insurer of money in excess of the actual loss, there can be no recovery on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1362–1366; Dec. Dig. ☞553.]

8. TRIAL ☞258—INSTRUCTIONS—REPETITION.

When several charges are requested covering the same phases of the case and questions of law, differing only in wording, the court may give one and refuse the others.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 550, 551, 553, 554, 556; Dec. Dig. ☞258.]

9. APPEAL AND ERROR ☞1151—DISPOSITION—REMITTITUR—REFORMATION—TRIVIAL EXCESS IN RECOVERY.

In suit on a fire policy for $500 on household goods, where the total recovery, for principal and interest, amounting to $578.85, was excessive to the extent of $1.50 through the erroneous allowance of interest for 18 days too long, the amount was too trivial to call for a

remittitur or to justify a reformation of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4506; Dec. Dig. ☞1151.]

Error from Clay County Court; W. T. Allen, Judge.

Action by Frank Sadau against the Fidelity Phenix Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thompson Knight, Baker & Harris, and Will C. Thompson, all of Dallas, and P. M. Stine, of Henrietta, for plaintiff in error. Leslie Humphrey, R. E. Taylor, and Wantland & Parrish, all of Henrietta, for defendant in error.

BUCK, J. This is the third appeal of the case of Frank Sadau against the Fidelity Phenix Fire Insurance Company. Suit was first filed in 1911, and, from a judgment in favor of plaintiff on a policy in the sum of $500, defendant prosecuted a writ of error, and the judgment was reversed by this court, as reported in 159 S. W. 137. Again, from a judgment in favor of plaintiff in error, an appeal was prosecuted, and, the case having been transferred to the Court of Appeals for the Seventh judicial district, judgment of the court below was again reversed, as reported in 167 S. W. 334.

Plaintiff alleged the issuance of a policy of fire insurance by the defendant company covering household furniture situated and contained in a house in Henrietta, Tex., and occupied by his wife and children as a home; said policy being dated July 27, 1911, and running for one year. He further pleaded payment of the premium, the destruction of the household goods by fire on August 26, 1911, and that their value was $1,000, and that proof of loss was furnished more than 60 days before filing of suit; and he pleaded further acts which are claimed to be waivers on the part of defendant company. He prayed for the amount of the policy, with interest from October 1, 1911.

Defendant, after a general demurrer and special exceptions, pleaded a general denial and specially that the assured had not furnished to it the proof of loss required by the policy sued on, nor had he complied with its demands to furnish certain bills of purchase for goods claimed to have been lost, and further that assured was guilty of fraud, as that term is used in the policy.

From a judgment for plaintiff in the sum of $578.85, with interest at 6 per cent. from date of judgment, a writ of error has been prosecuted to this court.

Plaintiff testified that, at the time of the fire, he and his two daughters were living on his farm near Henrietta, while his wife, with the other children, were living in town; that the furniture insured was in the house occupied by his wife and children and was a total loss; that about two weeks after the fire the adjuster of the defendant company came to plaintiff's farm in the country to see him about the fire. He further testified:

"I gave the agent of the insurance company a list of the property destroyed about two weeks after the fire occurred, and at that time he told me that I would have to furnish him the bills of the goods, but demanded no further proof of loss. I told him I could not give him the bills for these goods. He said that I would have to furnish him these bills. * * * He was the only person who came to see me. * * * I furnished a typewritten copy of the list of goods destroyed to the insurance company. I gave it to Mr. Conn, and he sent it in for a settlement. This list I took to Mr. Conn, and I do not know what he did with it. After the fire I received the letter, but since I can't read English I took it to an attorney, and he read it for me."

The letter mentioned was as follows:

"December 1, 1911.

"Mr. Frank Sadau, Henrietta, Texas—Dear Sir: I am requested by the Fidelity Phenix Fire Insurance Company to advise you that if the list prepared of the property sent to it, sworn to by you on the 18th day of November, 1911, before W. T. Allen, county judge of Clay county, is intended as a compliance with the requirements of policy 5007, for the making and furnishing proofs of loss, showing the facts called for in the policy, bearing upon the question of the liability of the said company, then the list is unsatisfactory for such purpose and is unsatisfactory as any compliance with the requirements of the policy as to the furnishing of information bearing upon the loss under the policy and the property involved in the fire as required by said contract. You are further advised that the company cannot recognize as correct, either the items contained in said list or the values set opposite thereto, but takes the position that items included in said list were not involved in the fire, which were not lost and damaged, and the values set out in said list of items which were involved in the fire are overvalued, and the amount set opposite the same is excessive.

"Yours very truly, William Thompson."

Plaintiff and his wife both testified that they had bought the furniture alleged to have been destroyed by fire at various places, including Wichita Falls, Denton, Ft. Worth, and Henrietta, and many of the articles plaintiff testified he purchased from persons whose names he did not know. Plaintiff further introduced in evidence a typewritten copy of the list of articles alleged to have been destroyed; the introduction being as follows:

"The following is a full and complete list of all the goods that were destroyed on the 26th day of August, 1911, said goods belonging to Frank Sadau, and covered by policy of insurance of the Fidelity Phenix Fire Insurance Company No. 5007."

Then follows the list of the articles, with the valuation of each placed opposite thereto. Before W. T. Allen, county judge of Clay county, Tex., plaintiff made the following affidavit attached to said copy and list:

"State of Texas, County of Clay.

"Before me personally appeared Frank Sadau, and upon his oath says that the above list is the goods that were destroyed by fire on the 26th day of August, 1911, and that the value set op-

posite each item represents the true value of each item of goods and that said goods 'were in the house rented by the said Frank Sadau at the time of the fire."

Mrs. Sadau testified, in part, that ·at the time of the fire she and her children were sleeping on the front porch and did not know anything of the fire until she was awakened by a neighbor's firing a gun; that at that time the fire was burning in the front room, but that she thought it started in the back part of the house; that, at the time the policy was written, the agent, Mr. Conn, came to the house and examined the household effects, and that she furnished him with a list 'of the articles in said house at the time, but that said agent did not come to see them after the fire. She further testified as to the articles alleged to have been lost by this fire and the values thereof.

The main question in issue is as to whether or not plaintiff furnished defendant company with a proof of loss in compliance with the conditions of the policy, and, in the event it should be held that he did not do so, whether or not such compliance was waived by the defendant company; and, to the failure of the court to give defendant's peremptory instruction requested, plaintiff in error's first assignment is directed. The policy in question provides, among other things, as follows:

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, * * * making a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon, and within 90 days after the fire, unless such time is extended in writing by this company, shall return' a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property, the cash value of each item thereof, and the amount of loss thereon, * * * and shall furnish, if required, a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of the fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify, and shall also furnish, if required, verified plans or specifications of any building, fixtures, or machinery destroyed or damaged. The insured as often as required shall exhibit to any person designated by this company all that remains of any property herein described and submit to examinations under oath by any person named by this company and subscribe the same, and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof, if originals be lost, at such reasonable places as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made. This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until 60 days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including award by appraisers when ap-

178 S.W.—36

praisal has been required. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

[1, 2] It may be conceded that the proof of loss as made by plaintiff was not in compliance with the terms of the policy, and that, unless the jury were justified in finding from the evidence that those conditions and proofs stipulated in the policy were waived by the defendant company, the judgment must be reversed. It will be noted that the only objection made by the adjuster to the proof and list furnished him by the plaintiff, as testified to by plaintiff and his wife, was that such proof did not contain bills or receipts from those from whom the plaintiff had purchased the furniture and goods, and the only defect in such proof, as pointed out in the letter as heretofore set out, is that:

"The list is unsatisfactory for such purpose, and is unsatisfactory as any compliance with the requirements of the policy as to the furnishing of information bearing upon the loss under the policy and the property involved in the fire as required by said contract;" and further "that the company cannot recognize as correct either the items contained in said list, or the values set opposite thereto," etc.

We believe that the authorities support the proposition that, before an insurance company may defeat a claim for liability for loss because of any inaccuracy or other defect in the proofs of loss submitted, it must point out to the claimant the respects in which it is claimed such proofs are inaccurate, and a failure on the part of the insurance company so to do within a reasonable time will constitute a waiver of such alleged defective proof.

In Northern Assur. Co. v. Samuels, 11 Tex. Civ. App. 417, 33 S. W. 239, the Court of Civil Appeals for the Fourth District, speaking through Justice Neill, in discussing similar terms in an insurance policy, says:

"It has been seen from the facts that it was not shown what defects, if any there were in the proofs of loss, were specified or objected to by appellant. No principle seems better settled than that 'where there are defects in the proofs of loss, whether formal, substantial, or, indeed, in any respect, which could have been supplied if specific objections had been made thereto by the underwriters, a failure on their part to object to the proofs upon that ground, or to point out the specific defect, or to call for the information omitted within a reasonable time, is considered a waiver, however defective, informal, or insufficient such proofs may·be.' "

See, also, Wood on Insurance, § 452 (2d Ed.), and authorities cited in note 1, p. 962, Id.

"Proofs of loss," says the same authority, "are presumed to be required as a means of enabling the insurer to determine whether there has been a loss, whether the insured had a requisite insurable interest in the property, and whether there was a loss by any of the perils insured against, and the nature and extent of the loss, rather than as a means of enabling the insurer by sharp. practice and knavish tricks to defeat its liability for the loss."

As it appears to us, the requirement made by the adjuster that the plaintiff should furnish bills from those from whom he had bought the goods alleged to have been destroyed in the fire was an unreasonable requirement and not one which the plaintiff in error could enforce under the circumstances, as disclosed by the evidence in this case; it appearing that the articles had been bought from various persons and in several different towns, and it appearing, as testified to by plaintiff and not denied by defendant, either by pleading or by evidence, so far as we have been able to determine, that he could not furnish the defendant with such data. That one who has been so unfortunate as to have his household goods destroyed ought to be required, as a prerequisite for recovery on an insurance policy covering such household goods, to furnish the insurance company with bills or statement of sale from those from whom such goods were purchased, it seems to us would, under the facts disclosed in this case, be unreasonable and amounting to a denial of the right of recovery. Plaintiff and his wife were poor German farmers, evidently unlettered and unable to read English. Some of these goods had been given to them by kindly neighbors; others they had purchased in various towns from merchants whom they did not know, and who doubtless did not know them, and who could not be expected to remember or recall the sale of the goods in question; and we think the facts justify the conclusion that, as the plaintiff testified, he was unable to furnish this character of proof.

It will be further noted that the letter from the defendant company, worded by an able and experienced lawyer, was so couched as to amount only to a general objection to the proof submitted, if not a denial of liability altogether on the policy. The specific defects now relied on were not pointed out. In fact, the wording of the letter was calculated to leave the insured in doubt as to the real objections to the proof submitted urged by defendant company, and, further, to imply that, in so far as the objections not even hinted at were concerned, they were waived.

While the plaintiff in error urges that more than three years elapsed between the fire and the last trial, and yet no "satisfactory proof" had been offered by plaintiff, and that therefore plaintiff should be denied a right of recovery because of such long-continued omission and failure, yet with more justice and reason it might be urged that for the same length of time defendant company had failed to specifically point out the respect or respects in which such proofs were deficient, except as to the demand for the bills or receipts, which we have discussed hereinbefore, and the more or less general objections contained in the letter of December 1, 1911. As well said by defendant in error in his brief:

"A forfeiture will not be decreed by reason of the failure of the insured to do an impossible thing. In this case the plaintiff testified that it was impossible for him to furnish the bills for the goods destroyed by the fire."

As held by the Supreme Court in the case of Lion Fire Insurance Co. v. Starr, 71 Tex. 733, 12 S. W. 45:

"An insurance policy, containing a clause requiring the assured to produce account books and vouchers in case of loss by fire, is not avoided by failure or refusal to produce them, unless the policy provides in express terms for such forfeiture; but the failure or refusal may be proven, and is a proper subject of comment before the jury as to the extent of the loss."

Moreover, the requirement that "the insured, as often as required, * * * shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if original be lost," etc., implies that such duty would, in any event, rest upon the insured in the event he had, or had had, such original bills, invoices, and other vouchers. In the event insured had not received such bills or invoices at the time of the purchase, he could not well produce them or copies thereof.

The court below in this case, at the instance of defendant, charged the jury as follows:

"If you find and believe from the evidence that plaintiff, Frank Sadau, has not filed with or sent to the defendant, Fidelity Phenix Fire Insurance Company, a proof of loss, as required by the terms of the policy sued on, then unless you find that the filing or sending of such proofs has been waived by the defendant, Fidelity Phenix Fire Insurance Company, you will find for the defendant, Fidelity Phenix Fire Insurance Company."

The further charge was given at the instance of defendant:

"If you find and believe from the evidence the plaintiff, Frank Sadau, after the fire willfully presented to the defendant, Fidelity Phenix Fire Insurance Company, a list of articles lost in the fire which contains items not listed therein, or items excessively valued, for the purpose of obtaining from this defendant, Fidelity Phenix Fire Insurance Company, money in excess of the actual loss sustained by the plaintiff, then in that event you will find for the defendant, Fidelity Phenix Fire Insurance Company."

[3-7] We think that this case was properly submitted to the jury, and that the court did not err in refusing to give the peremptory instruction, and that the charges given, both in the court's main charge and those of the defendant's special charges submitted, presented the issues fairly and correctly and protected the legal rights of the defendant.

[8] Other assignments are directed to the failure of the court to give specially requested charges, but, in so far as they were pertinent, we believe that the issues therein presented were submitted under other charges given at the request of the defendant, and therefore the plaintiff in error's assignments challenging the correctness of the court's ruling in refusing to give these charges are overruled. Where several charges are presented to the court covering virtually the

same phases of the case and questions of law, but differing in wording, the court is justified in giving one and refusing the others. Railway Co. v. Hayney (Civ. App.) 94 S. W. 386.

[9] In its third assignment plaintiff in error complains because the court refused to give its special charge No. 8, which, in effect, instructed the jury that in no event could they find interest for plaintiff in this suit for a time beginning before 60 days had elapsed after a satisfactory proof of loss had beer received by this company, unless they should find that there had been a waiver, in which event they could not calculate interest prior to such waiver, and in no event earlier than October 1, 1911. If there was a waiver of proof of loss, as found by the jury, in effect, such waiver was by virtue of the letter from the defendant company signed by its attorney, or by the failure of the adjuster to specify the respects in which said proofs were defective, except as heretofore noted. The latter's visit to plaintiff's home was about two weeks subsequent to the fire, which occurred August 26th. The letter from Mr. Thompson is dated December 1, 1911. The verified proof of loss was mailed to defendant on November 18th. If it should be held that the letter of December 1st constituted a waiver of further proof, in the absence of subsequent specific requests for information, then the 60 days during which defendant was not required to pay interest began November 18, 1911, and ended January 18, 1912. The court's charge authorized interest from January 1, 1912. The interest on $500 for 18 days would be $1.50. "Lex non curat de minimis." We do not think the amount involved is sufficient even to require a remittitur or justify a reformation of the judgment.

While we have not specifically discussed all of the assignments, we have carefully examined the same and have concluded that they do not present reversible error, and hence they are overruled.

The judgment is affirmed.