## NEW YORK UNDERWRITERS' INS. CO.
## v. SPROLES.
## No. 10005.

Court of Civil Appeals of Texas. Galveston.
June 22, 1934.

Rehearing Denied July 12, 1934.

King, Wood & Morrow and Newton Gresham, all of Houston, for appellant.

W. S. Sproles, of Angleton, and Peak & Rowland, of Houston, for appellee.

GRAVES, Justice.

This was a suit upon a windstorm insurance policy in which the trial court, sitting without a jury, rendered a judgment in favor of the appellee against the appellant Insurance Company, filing in support thereof, upon request, findings of fact and conclusions of law as follows:

"Findings of Fact and Conclusions of Law.

"At the request of the defendant, New York Underwriters Insurance Company, I hereby make the following Findings of Fact and Conclusions of Law on the plea in abatement filed by the defendant, New York Underwriters Insurance Company, to the plaintiff's cause of action, which plea in abatement was heard and overruled by the Court on the 7th day of February, A. D. 1933:

"I. I find that the plaintiff, W. S. Sproles, held a policy, No. 76,093 dated the 5th day of January, 1932, for the term of one year, executed by New York Underwriters Insurance Company; and was by said policy insured in said company against loss and damage caused by windstorm, cyclone and tornado; the property so insured being the plaintiff's residence and household furniture, located in the City of Angleton, Texas, on Magnolia Street, in the amount of $1500.00 on the residence, and $500.00 on the furniture; and that said policy for its full amount was in full force and effect on the 13th day of August, 1932.

"II. On August 13, 1932, I find that a severe and dangerous windstorm of cyclonic nature occurred at Angleton, Texas, causing serious damage to the dwelling and household furnishings covered by said policy and being such damage as would come within the terms of the policy.

"III. I find that the plaintiff gave the notice of loss and furnished the proof of loss in the time and in the manner required under the terms of the policy. That the plaintiff and the representative of the defendant insurance company, Mr. O. T. Klepinger, Special Agent and Adjuster, were unable to agree on the amount of damage to be paid to the plaintiff by the defendant for the loss under said policy. That defendant demanded under said policy an appraisement as provided in said policy. In accordance with that demand, plaintiff and defendant on the 22nd day of September, 1932, entered into a written agreement, Lewis H. Follett being selected by plaintiff, and J. W. Northrop, Jr., being selected by the defendant as appraisers.

"IV. I find that said agreement contained among other provisions the following:

" 'Provided that the said appraisers shall first select a competent and disinterested um-

pire, who shall act with them in matters of difference only. The award of said appraisers and umpire (if the umpire be called upon to act), or of any two of them, made in writing, in accordance with this agreement shall determine the amount of said sound value and of said loss and damage, as provided by the policy or policies of said Company or Companies,' and

" 'It is expressly stipulated and agreed that the appraisement provided for by this agreement is for the purpose of ascertaining and fixing the sound value of said property and the amount of said loss and damage only, and that neither such appraisement nor this agreement to enter into same shall waive or invalidate any right or rights of either party to this agreement under said policy or policies or any provision or condition thereof.'

"V. I find that as to arbitration the policy provided as follows:

" 'In case the insured and this Company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire. The appraisers shall then appraise the loss and damage stating separately sound value and loss or damage to each item; and failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.'

"VI. I find that said policy no where provides for arbitration other than as above quoted, and that said policy does not provide what shall be done in the event the appraisers fail to agree upon an umpire or fail to make an award under said above quoted provision.

"VII. I find that the appraisers selected by the parties did not meet and attempt to agree on an umpire, but that all efforts to so agree on an umpire were made by correspondence between said appraisers; that each appraiser at various times suggested by correspondence to the other a list of names from which an umpire might be selected, but that said appraisers were not willing to accept any umpire named by the other; and from September 22, 1932, the date of the selection of the appraisers, up to January 4, 1933, the date of the filing of this suit, the appraisers had failed to agree on and name an umpire, and failed to make an award, as provided by the insurance policy.

"VIII. I find that the insured, W. S. Sproles, on November 17, 1932, and November 26, 1932, wrote joint letters to the appraisers, Lewis H. Follett and J. W. Northrop, Jr., urging them to act under their appointment, and, on December 19, 1932, wrote a letter to J. W. Northrop, Jr., replying to one from him on the 17th day of December, calling his attention to the fact that they had failed to act, and expressing the opinion that he would not be required to delay longer.

"IX. I find that after the execution of the agreement naming the appraisers that the New York Underwriters Insurance Company, and Mr. O. T. Klepinger, as Special Agent, took no steps to obtain action by the appraisers, looking to the making of an award; that neither said company nor the Special Agent called upon W. S. Sproles, the insured, to appoint other appraisers or to do anything looking to the making of an award by the appraisers.

"X. I find that J. W. Northrop, Jr., the appraiser named by the Special Agent of the Defendant Insurance Company, had on several occasions acted as appraiser or adjuster for insurance companies and that he construed his position as appraiser to constitute him as a representative of the insurance company rather than as representing both parties as an unbiased and disinterested appraiser, as shown by his letters of date September 29, 1932, and November 28, 1932, to the other appraiser, Lewis H. Follett. I find that the said J. W. Northrop, Jr., refused to accept as an umpire any one living in Angleton or vicinity, whose names were suggested to him by the other appraiser, Lewis H. Follett; and refused to accept other names suggested by Lewis H. Follett, for the reason only that he did not know them. I further find that said J. W. Northrop, Jr., was not an unbiased and disinterested appraiser, such as is contemplated by the arbitration provision in the policy.

"XI. In this hearing, I find that the plaintiff and the defendant have agreed that the household furnishings were damaged and that the amount of such damage was the sum of $376.00; but could not agree as to the amount of damage to the dwelling house.

"Conclusions of Law.

"XII. I conclude as a matter of law that the plaintiff suffered a damage to his dwelling and his household furnishings by reason of the storm of August 13, 1932; and that the

policy sued on was in full force and effect at the time of said damage; and that the damage suffered by plaintiff was recoverable under said policy."

"XIV. That the plaintiff, W. S. Sproles, complied with all the requirements placed upon him by reason of such policy, and especially with the provision relating to arbitration.

"XV. That the provision in said policy providing for arbitration became operative only when applied for by one of the parties; that said provision is only one manner or one way in which the amount of damage may be ascertained, but in order to ascertain the amount of damage suffered under this provision, the requirements therein must be fully complied with. That this provision in the policy having been invoked by the defendant insurance company and the plaintiff having complied therewith to the extent of his ability, it devolved upon the defendant insurance company, when it was ascertained or ascertainable that the appraisers were unable to agree on an umpire, and thereby effect an agreement as to damage so as to make an award, to again apply to the insured within a reasonable time to select other appraisers. I conclude as a matter of law that the delay of more than three months from the time of the selection of the appraisers was an unreasonable time. I conclude as a matter of law that the insured would only be required to delay filing suit for a reasonable time after the damage is sustained and after the appraisers are selected to permit the ascertainment of the amount of damage to be determined by the appraisers and umpire under the provisions of the policy relating to arbitration.

"XVI. I conclude that the agreement to submit to the fixing of the damage by the appraisers is not a waiver by the insured of any other rights which he had under the policy; and if the ascertainment of such damage is not fixed by the appraisers, as provided in the policy, and in the agreement, within a reasonable time, that the insured then had his legal right to ascertain and fix his loss and damage by instituting suit therefor.

"XVII. I conclude that J. W. Northrop, Jr., was not an unbiased and disinterested appraiser as contemplated by the policy and the agreement executed by the parties under said policy for arbitration, and was therefore a disqualified appraiser.

"XVIII. I conclude that the insured, W. S. Sproles, delayed a reasonable time before instituting suit.

"XIX. From these findings and conclusions, I conclude that the plea in abatement was not well taken and should be overruled."

While these findings were stated with specific reference to the appellant's plea in abatement—to the effect that the suit had been prematurely brought, because no appraisement had first been had as provided in the policy—all the evidence heard thereunder, by agreement of the parties, was also considered by the court in trying and deciding the cause on the merits.

Appellant assails the final judgment on two grounds: (1) That its plea in abatement should have been sustained, because the stipulated appraisement was demanded by it and wholly failed—no umpire ever having been agreed upon—through no fault of its own, and the appellee having instituted no further attempts to secure an appraisal, as was his duty to do; and (2) it was error to give the appellee judgment for the full amount of the damage claimed, since the policy provides that "the insurance company shall not be liable for any damage caused by water or rain, whether driven by wind or not, unless the building insured or containing the insured property shall first sustain an actual damage to roof or walls by the direct force of the wind and then shall be liable for only such damage to the interior of the building or the insured property therein as may be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind," and neither the pleadings nor proof show what part, if any, of such damage was caused by water and rain entering the building through openings in its roof or walls made by the direct action of the wind.

Neither of these contentions, we conclude, should be sustained; that relating to the overruling of the plea in abatement—even under appellant's own arguments and authorities—depends upon whether or not the trial court's findings to the effect that the failure of the appraisal was due to its own fault is supported by the evidence; after a careful examination of the statement of facts, this court is unable to say there is any lack of supporting proof; upon the contrary, it is thought the able trial court was warranted in making all the findings stated concerning the appraisement, and they are accordingly adopted here. Appellant is in error in assuming that the appellee's appraiser, Mr. Follett, "consistently took the position that he would agree to no umpire except some one living in the vicinity of Angleton," since the record shows otherwise to the effect that Mr. Follett proposed to

Mr. Northrop the names for that position of a number of other prominent people living in various towns, two of them in the city of Houston; the same thing may be said as to a like impression that Mr. Follett was opposed to selecting any one familiar with building costs, since it is shown that he proposed the names of several merchants and others of high standing and reputed familiarity with building costs, including Mr. W. L. Goyen, a general contractor of Houston.

Without further specification, it is determined that the trial court's findings as to the cause of and the fault in the failure of the appraisal are not without sufficient support in the testimony, and that, under the authorities, they justified the overruling of the plea of abatement. Uhrig v. Williamsburgh City Fire Ins. Co., 101 N. Y. 362, 4 N. E. 745; Vernon Ins. & Trust Co. v. Maitlen, 158 Ind. 393, 63 N. E. 755; Hickerson v. German-American Ins. Co. 96 Tenn. 193, 33 S. W. 1041, 32 L. R. A. 172; Hartford Fire Ins. Co. v. Asher (Ky.) 100 S. W. 233; American Cent. Ins. Co. v. Terry (Tex. Com. App.) 26 S.W.(2d) 162; Delaware Underwriters, etc., Ins. Co. v. Brock, 109 Tex. 425, 211 S. W. 779; Milwaukee Mechanics' Ins. Co. v. West Development Co. (Tex. Civ. App.) 275 S. W. 203; Fowble v. Phœnix Ins. Co., 106 Mo. App. 527, 81 S. W. 485.

In the last-cited case, Fowble v. Insurance Company, 106 Mo. App. 527, 81 S. W. 485, at page 486, the Kansas City Court of Appeals of Missouri states the principle, which it is thought fits the facts of the case at bar, as follows: "If the arbitrator selected by the assured suggests the names of worthy, competent, and unprejudiced persons residing near the scene of the loss for umpire, and the other arbitrator capriciously refuses to accept any of them, refusing to name any one on his part in the vicinity of the loss, and insists on some one at a distance, the assured may begin his action without arbitration."

As concerns the wind-damage provision in the policy, it is likewise error to say that neither the pleadings nor the proof brought this cause thereunder; in the first place, the appellee upon that feature alleged as follows: "That the said windstorm, cyclone and tornado was accompanied by a very heavy rain and that the rain water was blown through the roof and other openings made by the windstorm in various parts of the dwelling and drenched, damaged and destroyed all of the furniture, paper, canvas, painting, varnishing and handwork on the interior of said house, and all of the furniture contained in said house as more particularly described in said Exhibit 'B'."

In the next place, the testimony, particularly that of the appellee himself, supported these averments in fully establishing that at bottom all the damage was properly attributable to the direct action of the wind; in other words, that the evidence shows conclusively that all the rainwater producing the damage came through the openings first made in the house by the direct action of the wind, thus supporting the specific statement of the appellee to the effect, as he puts it, that "all the damage was done by the storm."

Since these conclusions cover the material questions raised on the appeal, further discussion is deemed unnecessary, and the judgment will be affirmed.

Affirmed.