**GULF INSURANCE COMPANY, Appellant,**

v.

**F. D. CARROLL et ux., Appellees.**

No. 3697.

Court of Civil Appeals of Texas.

Waco.

Dec. 2, 1959.

Thompson, Coe & Cousins, I. L. Allen, Dallas, for appellant.

Warwick H. Jenkins, Waxahachie, for appellee.

TIREY, Justice.

Plaintiffs grounded their cause of action on a Texas Standard Policy of Insurance providing coverage against fire and additional named perils, including windstorm and hail. They specifically alleged that the damage to their house described in the policy was due to windstorm, hail and rain that occurred on or about April 21, 1958. Defendant filed a plea in abatement based on the appraisal procedure described in the policy, and he alleged the performance of which was a condition precedent to suit on the policy. On pretrial the Court ordered plea in abatement tried to the jury along with the cause on its merits; the Court overruled plaintiffs' motion to suppress certain testimony and overruled all the exceptions contained in defendant's first supplemental answer and plaintiffs' first supplemental petition, except Special Exception by the defendant contained in paragraph 4 in its first supplemental answer, which is not pertinent here. Defendant, Waxahachie Bank & Trust Company filed a waiver and asked that it be dismissed and such motion was granted. The Court overruled defendant's exceptions to its charge, and submitted seven issues to the jury. These issues are, absent the burden of proof clause, substantially as follows, do you find:

(1) That plaintiffs' house was damaged on or about April 21, 1958, as a direct result of hail and windstorm?

Answer: Yes.

(2) What sum of money, if any, do you find from a preponderance of the evidence would be the actual and necessary cost of repairing and replacing the plaintiffs' property so damaged, if any, with material of like kind and quality within a reasonable time after such loss, if any?

Answer: $850.00.

(3) That immediately after said damage, if any, plaintiffs notified defendant, its agent, servant or employees of the amount thereof?

Answer: Yes.

(4) That after such notification, if any, the defendant, its agent, servants, or employees denied and refused to pay said claim or any part thereof?

Answer: Yes.

(5) That after such loss, if any, the plaintiffs did not make an effort to enter into an appraisal of said loss, if any?

"Let the form of your answer be 'They did make an effort to enter into an appraisal,' or 'They did not make an effort to enter into an appraisal.' "

Answer: They did make an effort to enter into an appraisal.

(6) That the defendant, its agents, servants or employees waited an unreasonable length of time before making a request for an appraisal of the plaintiffs' loss, if any, by a representative of each party?

Answer: Yes.

(7) That after said loss, if any, the plaintiffs furnished the defendant, its agents, servants or employees all information in regard thereto that was desired by the defendant, its agents, servants or employees?

Answer: Yes.

The Court overruled defendant's motion for judgment and granted plaintiffs' motion for judgment, and defendant seasonably filed its amended motion for new trial, and it being overruled perfected its appeal to this Court.

The judgment is assailed on what defendant designates as 4 points, they are substantially to the effect that the Court erred:

(1) In overruling defendant's plea in abatement at the close of evidence, for the reason that the undisputed evidence showed that plaintiffs' suit was prematurely brought;

(2) In admitting improper questions and answers asked of and given by the plain-

tiffs regarding efforts of settlement and compromise between the parties;

(3) In rendering judgment for the plaintiffs for the reason that the plaintiffs did not obtain a jury finding and did not discharge their burden of proof as to whether on the occasion described, the wind or hail had first made an opening in the walls or roof of the building, thereby immediately allowing rain to enter the building through such openings;

(4) In rendering judgment for plaintiffs because the plaintiffs failed to submit evidence and failed to obtain jury findings upon the proper measure of recovery under the contract of insurance.

Most of the controlling facts here are without dispute. The policy in suit, among other things provided, Conditions Applicable Only to Windstorm, Hurricane and Hail:

"Unless specifically named hereon, this company shall not be liable for * * * any loss caused by rain, whether driven by wind or not, unless the wind or hail shall first make an opening in the walls or roof of the described building, and shall then be liable for loss to the interior of the building, or the insured property therein, caused immediately by rain entering the building through such openings."

In defendant's pleadings on which it went to trial it specifically alleged:

" * * * that any loss alleged by the Plaintiff which is alleged to be caused by rain in the interior of the house was not caused immediately by rain entering the building through openings which were made at the time alleged and described in the Plaintiffs' petition, and such openings, if any there were, were caused at times prior to the occurrence alleged in the petition of the Plaintiffs."

Testimony was tendered to the effect that plaintiffs' loss occurred on April 21, 1958, and that notice was immediately given by plaintiffs to the insurance company. Mr. Blackwell, an insurance adjuster, testified that he went out to the residence of plaintiffs about April 23, for the purpose of making an inspection of the claimed loss and that no one was home, but that he had a ladder with him and that he climbed upon the ladder so that he could see the roof, but since no one was home he made no attempt to go in; that from his experience as an adjuster, which was some 25 years, he could not find any evidence of any hail or wind damage to the shingles but that the shingles were just old and worn and that the cracks or splits in the shingles were caused by the sun; he said it was "just plain weathering." He identified the roof as being covered in part by wooden shingles and in part by composition; that he made a second trip and found no one at home; that the third trip he made was some time between the 5th and 15th of May, and at which time he found Mr. and Mrs. Carroll home; that he went in and made an inspection. He testified specifically:

"Q. Do you carry proof of loss forms for Gulf Insurance Company with you? A. I have proof of loss forms. They are not Gulf Insurance Company.

"Q. Well, do you have them that Gulf Insurance Company will receive and accept? A. If I send it in with my recommendation, they would.

"Q. That is what I mean. If you accept liability for the company and work out a settlement or propose a settlement, if you and the owner are working it out together, then you go ahead and make out a proof of loss and have him sign it in ordinary cases? A. Ordinarily that is the system.

"Q. But in a case where you deny liability under the terms of the policy or you state that 'We can't help you because the deductible is too much,' you don't have any occasion to make out proof of loss forms? A. That is right.

"Q. And you don't do it because in effect you have said, 'We don't owe you anything and we are not going to pay you'? A. When we think the loss is under a hundred dollars, that is ordinarily all there is to it.

"Q. As far as you are concerned, the case is closed? A. Ordinarily. * * *

"Q. Do you know whether or not it rained any between the time of the storm and the time you saw the interior of the house other than the actual night of the 21st of April? A. I think we had some rain.

"Q. That would account for those interior or exterior circles? A. It didn't look like that to me.

"Q. Well, it could account for it? A. In my opinion, No."

The record shows that more than four months expired from the date of the claimed loss of April 21st, and notice thereof before the insurance company made its demand for appraisal on August 22, 1958. On the foregoing date appellant wrote plaintiffs; we quote the pertinent part:

"Due to the wide difference of opinion as to the amount of loss and damage, if any, sustained to your dwelling, the Gulf Insurance Company of Dallas, Texas, is demanding an appraisal of your loss and damage."

In reply plaintiffs' attorney, on August 26th, wrote the carrier:

"Your letter to Mr. F. D. Carroll, regarding his claim for loss and damages resulting from storm and hail on April 21, 1958, wherein you demand appraisal under the terms of your contract, has been turned over to us for appropriate attention.

"It appears from your letter that you have revised your earlier position that you have no liability in this case; your agent and representative, Mr. Blackwell, has made the statement both to Mr. Carroll and to others that he 'has no claim', and in view of this statement and your subsequent actions, we think it well established that this amounts to a denial of liability.

"Further, it is our opinion that under the law you have waived your right to demand compliance with this provision of the contract, by your inattention to the claim and your very obvious lack of effort to make a bona fide effort to settle the claim. So far as we know, there has never been any offer in any amount, either to Mr. Carroll or to anyone else, and your own agent in Waxahachie will verify this.

"In addition, it appears that you are not entitled to make this demand by reason of the passage of time since the claim was first presented to you and your adjuster made his investigation.

"However, if we are wrong in all of this, and if in fact you have considered it a valid claim and have made bona fide efforts to settle it, we would like to know the facts. Assuming that they are of such a nature as to establish your bona fide acceptance of liability, and efforts to settle, we are certainly not opposed to a further effort to settle the matter. In this connection, you are hereby notified to advise us not later than the 1st day of September, 1958, by noon, as follows:

"1. That you accept and assume liability under your policy for the damages to Mr. Carroll's property by reason of the occurrence of April 21st mentioned above;

"2. That you have made bona fide efforts to settle the claim, giving us your offers that have been made in the past to Mr. Carroll;

"3. Your present offer to settle the claim.

"Unless we hear from you by the date given and with the particulars stated, we will assume that, contrary

to your policy prerequisites for appraisal, you do not deny the liability, and we will proceed accordingly."

In response the insurer under date of August 28th, wrote plaintiffs' attorney:

"Thank you, Mr. Jenkins, for your letter of August 26. Our records do not indicate we denied liability, but what our adjuster told Mr. Carrol was that as far as he could determine, the damage did not exceed the Deductible Clause, and for that reason we would not owe him any money."

In response plaintiffs' attorney wrote the carrier on September 11th:

"Our client, Mr. Carroll, has agreed to the appointment of competent and disinterested appraisers in the hope of a speedy settlement of this matter; however, our position that Gulf Insurance Company has waived appraisement as a matter of contractual right by its arbitrary denial of liability remains unchanged.

"Mr. Carroll therefore submits the name of Mr. M. J. Hollabaugh, 703 Brown, Waxahachie, Texas, to represent him as a competent and disinterested appraiser. We understand that the next step is the appointment, by the appraisers, of an umpire within the next fifteen days."

The record reflects that Hollabaugh was to be the appraiser for the insured, and that Homer L. Abernathy of Dallas would act for the company and testimony was tendered to the effect that Mr. Abernathy was to get in touch with Mr. Hollabaugh in order that they might select a third party to help them with the appraisal. Mr. Hollabaugh testified to the effect that he was advised that Mr. Abernathy would contact him, but that he did not do so. Mr. Abernathy's explanation for not contacting Mr. Hollabaugh was to the effect that when he came to Waxahachie for the purpose of contacting Mr. Hollabaugh that he found that suit had already been filed, and

for that reason he did not make any further effort to contact Mr. Hollabaugh. Plaintiffs' petition was filed on the 14th day of October, 1958.

■ Going back to appellant's Point 1. Under the foregoing conditions did the Court err in not granting defendant's plea in abatement? We think the answer is No. Plaintiffs suffered their alleged damages by windstorm, hail and rain April 21, 1958. From April 21st to August 22nd, is a period of four months and one day, and August 22, 1958 being the day that the insurance carrier sought to exercise its rights of appraisal under the contract. The jury in its verdict found that the carrier did wait an unreasonable length of time before making a request for an appraisal of the loss, and we think the evidence is ample to sustain this finding. Moreover, the evidence is without dispute that the plaintiffs agreed to the appointment of competent and disinterested appraisers in the hope of a speedy settlement and with the understanding that the Gulf Insurance Company had waived its right to appraisement under the terms of the policy. See Blake v. Hamburg-Bremen Fire Ins. Co., 67 Tex. 160, 2 S.W. 368, 370; our Supreme Court made this statement of the Rule:

"A contract may be consummated by letters deposited in the post-office; and when an offer is made contemplating an acceptance in this manner, and a letter accepting it is properly mailed, the agreement is complete. Citing cases. * * *

"The cases are numerous, both in the English and American courts, which hold, if the offer contemplates an acceptance through the post-office, the contract is complete as soon as the letter is mailed accepting it."

We think the letter of plaintiffs' counsel of September 11th makes clear plaintiffs' position to the effect that they claimed that the carrier had waived its right under the terms of the policy to an appraisement.

Moreover, we think the evidence is without dispute from and after the receipt of this letter of plaintiffs' counsel of September 11th, that the carrier made no effort to carry out the terms of this new appraisal agreement until sometime after October 14th. This exact time is not shown but Mr. Abernathy stated that his reason for not proceeding with the appraisement was due to the fact that he found that suit had already been filed (filing date 14th day of October, 1958). Surely, under the terms of the policy, and under this undisputed factual situation, plus the findings of the jury, the Court did not err as a matter of law in finding that the carrier had waived its rights of an appraisal under the terms of the policy, and that the plea in abatement should be overruled. We think this view is supported by the doctrine announced by the opinion in Springfield Fire & Marine Ins. Co. v. Barnett, Tex.Civ.App., 213 S.W. 365, er. dis., w. o. j. See also Boston Ins. Co. v. Kirby, Tex.Civ.App., 281 S.W. 275, n. w. h.; Northern Assurance Co. v. Samuels, 11 Tex.Civ.App. 417, 33 S.W. 239, n. w. h.; New York Underwriters' Ins. Co. v. Sproles, Tex.Civ.App., 73 S.W. 2d 857, n. w. h. See also T.J. Vol. 24–B, Insurance, pages 686–691, Secs. 343–344; also pages 697–699, Secs. 349–351.

▆ Appellant's Point 2 is to the effect that the Court erred in admitting improper questions and answers asked of and given by the plaintiffs regarding efforts of settlement and compromise between the parties. We think the foregoing point is without any merit whatsoever. This record is without dispute from the standpoint of both appellant and appellees that appellant at no time offered any sum in settlement of this claim. Appellant made no offer to appellees and appellees made no offer of settlement to appellant. The evidence complained of was tendered on appellant's plea in abatement, and as we understand the Court's ruling it was so limited. Plaintiffs, in their supplemental petition, excepted to the defendant's pleading the appraisal as a bar to the action on the ground that

it constituted a showing of efforts to compromise, and plead further that the right to demand an appraisal had been waived by defendant, and further plead that the collateral agreement entered into on September 11, 1958 with reference to the appraisal was a compromise effort which itself was waived by the actions and conduct of the defendant. In support of this view the plaintiffs filed their motion to suppress the offer of compromise settlement, attaching exhibits that were later introduced without objection supporting their position. The plaintiffs' special exceptions were all overruled by the Trial Court, and as we have stated above, the Court let the evidence go to the jury on the plea in abatement which it had ordered tried with the merits. Under this undisputed situation, and since the jury understood that neither the defendant nor the plaintiffs offered to compromise the amount of plaintiffs' claimed damages, no prejudicial or reversible error is shown. We do not think this point needs to be labored, and it is overruled. Perhaps we should add that Springfield Fire and Marine Ins. Co. v. Barnett, supra, and Boston Ins. Co. v. Kirby, Tex.Civ.App., 281 S.W.2d 275; Northern Assurance Co. v. Samuels, 11 Tex.Civ. App. 417, 33 S.W. 239, support our views in this behalf. See also Tex.J.P. Vol. 24–B, page 697.

▆ Appellant's Point 3 is to the effect that the Court erred in rendering judgment for plaintiffs because plaintiffs did not obtain a jury finding and did not discharge their burden of proof as to whether on the occasion described, the wind or hail had first made an opening in the walls or roof of the building, thereby allowing rain to enter the building through such openings. We overrule this point for reasons which we shall hereafter briefly state. First of all, the Court submitted Issue 1, which was to the effect: Do you find that plaintiffs' house was damaged on or about April 21, 1958, as a direct result of hail and windstorm? And the jury answered, Yes. The evidence is ample to show that on the day

of this particular storm the wind and the hail came and after that the rain, and that the rain came through with the resulting damages to the wallpaper. The evidence is ample to sustain the jury's finding in this behalf. There is no primary evidence to the effect that the roof had sustained such damages by use and the weather prior to the storm on the 21st. It is true that the adjuster testified to the effect that from his experience as an inspector, and having seen the roof after the storm that the damages were not caused by the storm on the 21st. It is also true that he said that the rain stains on the ceiling indicated that they had been caused prior to the storm, but the jury did not accept the adjuster's view. We think Issue 1 submitted to the jury the question directly as to whether plaintiffs sustained any damages on the 21st by wind and hail, and on the evidence the jury had a right to take either the view of the adjuster or they could believe the testimony of plaintiffs and their witnesses and the jury chose to believe plaintiffs' witnesses.

■ Point 4 is to the effect that the Court erred in rendering judgment for plaintiffs because plaintiffs failed to submit evidence and failed to obtain jury findings upon the proper measure of recovery under the contract of insurance. We overrule this contention for reasons which we shall hereinafter briefly state. The policy of insurance states in part:

"* * * Liability hereunder shall not exceed the actual cash value of the property at the time of loss ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss."

As we understand the foregoing provision it provides for two ways in which the insured may plead and prove damages. It occurs to us that the first clause would certainly be available and apply to an insured whose house or building had been de-

stroyed and where it was a total loss. The second clause would apply to an insured standing in the shoes of the plaintiffs where they have sustained a partial damage to their building. Plaintiffs elected to fix their damages under the latter clause. They did it by pleading their partial loss and by tendering proof as to the reasonable cost of such repairs, using material of "like kind and quality." The Court submitted the damage issue, absent the burden of proof clause, substantially: What sum of money, if any, would be the actual and necessary cost of repairing and replacing the plaintiffs' property so damaged, if any, with material of like kind and quality within a reasonable time after such loss, if any? And the jury answered, $850. The record shows without dispute that repairs to a house under such conditions cannot be made without using new material, and we think the appellant's criticism of the Court's charge in this behalf is strained and without any justification whatsoever. Appellant, in its brief, says:

"The action of the Trial Court in submitting its charge in the incomplete fashion of Special Issue No. 2, and the failure to include therein the policy language as to depreciation, to which failure the Defendant promptly objected, is to ignore completely the entire basis of the lawsuit, to-wit, the contract and its terms."

We are not in accord with this view of the contract. First of all, the property was not destroyed and it needed only to be repaired. It is without dispute that the damage could be repaired only by the use of new material of like kind and quality. In the second place, we see nothing in the liability clause to indicate that a deduction for depreciation is required to be applied to the damage accruing for repairs made under the second clause, and we so hold. We have found no case in the books expressly touching upon this exact situation. The nearest cases are: Texas Moline Plow Co. v. Niagara Fire Ins. Co., 39 Tex.Civ. App. 168, 87 S.W. 192, er. ref.; and

234

Southern National Ins. Co. v. Wood, 63 Tex.Civ.App. 319, 133 S.W. 286. See also Fidelity & Guaranty Fire Corporation v. Ormand, Tex.Civ.App., 62 S.W.2d 675, w. dis.; Maryland Motor Car Ins. Co. v. Smith, Tex.Civ.App., 254 S.W. 526, n. w. h.

In 45 C.J.S. Insurance § 915, page 1014, we find this statement of the rule:

"If the value is to be arrived at by replacement or reproduction cost, it has been held that depreciation may not be deducted from the cost of replacement and restoration."

In Third National Bank v. American Equitable Ins. Co. of N. Y., 27 Tenn.App. 249, 178 S.W.2d 915, certiorari denied by Supreme Court, we find this statement of the rule, Pt. 14, at page 925 of 178 S.W.2d:

"While replacement cost is a dominant factor in fixing the amount of recovery for total loss of a building, it plays an even greater part in fixing the amount of recovery for a partial loss to a building. It would seem that the only practical way to measure the extent of partial damage to a building would be to inventory its damaged parts, and the only way to express such damage in terms of money would be to count the cost of replacing such parts, so as to restore the building to the same condition it was in just before the fire. And the view which we think supported by the better reason and the greater weight of authority is that depreciation may not be deducted from such cost because that would make the sum insufficient to complete the repairs and would leave the building unfinished; and this would fall short of the indemnity contracted for in the policy." Citing many cases.

Appellant relies on Roberdeau v. Indemnity Insurance Company of North America, Tex.Civ.App., 231 S.W.2d 948, n. r. e., and Continental Fire & Casualty Insurance Company v. Surber, Tex.Civ. App., 231 S.W.2d 750, n. w. h., to sustain its contention. We have no quarrel with these decisions, but do not think that they throw any particular light on the exact question before us.

Believing that this record wholly fails to present reversible error the judgment of the Trial Court is affirmed.