ANNA BOHLES, PLAINTIFF IN ERROR, v. THE PRUDEN-
TIAL INSURANCE COMPANY OF AMERICA, DEFEND-
ANT IN ERROR.

Argued February 27, 1912—Decided July 10, 1912.

1. The term "month" in a policy of life insurance construed to mean a calendar month.
2. Where a premium was due on a life insurance policy on June 30th, and by the terms of the policy a period of grace of one month was allowed for its payment, and the last day of grace fell on July 31st, which was a Sunday, the insured had the first day thereafter upon which lawful business could be transacted, which was Monday, August 1st, on which to pay the same.
3. The refusal of the insurer to accept the premium on that day and its claim that the policy had lapsed because the insured had not paid the premium within thirty days and that the policy would not be continued and no premium received unless the insured first underwent a medical examination, was a waiver, by the company, of any further tender of subsequent premiums, without notice to the insured that they would be received.

4. The insurer having denied liability on, the policy upon the specific ground that it had lapsed and therefore ceased to continue in force made it unnecessary to furnish proofs of the death of the insured in order that the policy may become suable.

5. Where a life insurance company issues several policies on the life of the insured and there is nothing contained in any of them which requires a separate proof of the death of the insured to be made, such proof of death made under one of them suffices to make the policy under which no such proof has been made, actionable.

On error to the Essex Circuit Court.

Before Justices BERGEN and KALISCH.

For the plaintiff in error, *Samuel Kalisch, Jr.,* and *Samuel Press.*

For the defendant in error, *Edward D. Duffield.*

The opinion of the court was delivered by

KALISCH, J.    A policy of insurance was issued by the defendant company on the life of George B. Bohles, under date of December 30th, 1902, by the terms of which the defendant company agreed to pay to Anna Bohles, the beneficiary and wife of George B. Bohles, the sum of $1,000 "immediately upon acceptance of satisfactory proof of the death of the insured during the continuance of this policy." The premium was payable "quarter-annually" on the delivery of the policy and on or before the 30th day of March, June, September and December, in every year during its continuance. The policy further provided: "In the payment of any premium under this policy, except the first, a grace of one month will be allowed during which time the policy will remain in force."

The insured died on the 18th day of April, 1905. On April 26th, 1905, the beneficiary, Anna Bohles, filed with the defendant company proofs of the death of the insured on two other policies of insurance issued by the defendant company on her husband's life.

An action was brought by the plaintiff against the defendant company on March 9th, 1910, to recover the amount due on

the policy under date of December 30th, 1902, the other two policies having been paid by the company.

At the trial, in response to a notice given by the plaintiff to the defendant company to produce the proofs of death of George Bohles, the insured, the defendant, by its attorney, produced the proofs of death filed with the company by the plaintiff under the two other policies and at the same time admitted that they were the proofs of death of the same George Bohles who was insured under the policy in litigation, but not admitting that they were proofs of death furnished in connection with that policy.

From the plaintiff's testimony it appeared that the defendant company after having received the premium of $7.84 from her for the month of June, on August 1st, discovered that the plaintiff's husband was ill and therefore it insisted upon her surrendering the receipt given her for such premium, and induced her against her most emphatic protests to accept a return of the money represented by the receipt, on the claim that the policy on the life of her husband had lapsed on July 30th, and, therefore, when she paid the June premium on August 1st, it came too late for acceptance by the company, and that her husband must undergo a medical examination before the premium would be accepted and the policy continued.

At the close of the plaintiff's case the only ground upon which the defendant moved for a nonsuit was that the payment of the premium had not been tendered to the company until after the premium had been due over thirty days. The trial judge granted this motion on the theory that the word "month" in the insurance contract should be construed to mean thirty days. Upon the argument before this court the defendant urged as an additional reason why the nonsuit should be sustained, that the plaintiff had not presented proofs of the death of the insured under this particular policy.

It is clear that the trial court erred in computing the period of grace in which the insured was entitled to pay the premium due on the policy. The premium became payable on June 30th. The month of July was a period of grace, to which the

insured was entitled under the policy. Therefore, the period of grace expired on July 31st. This was a Sunday. As the company provided no means by which the premium could be paid on Sunday and as the insured was entitled to the entire month of July in which to do so and as the last day happened to be Sunday, he was entitled to pay the same on the first day thereafter upon which lawful business could be transacted, which was on Monday, August 1st. This view is in accord with the weight of authority on the subject. See 38 *Cyc., tit.* "*Months,*" 311, and cases cited; *Campbell* v. *International Life Assurance Society,* 4 *Bosw.* 299; *Hammond* v. *American Mutual Life Insurance Co.,* 10 *Gray* 306; *Stryker* v. *Vanderbilt,* 3 *Dutcher* 68; *Von de Place* v. *Weller,* 35 *Vroom* 155.

It is important to bear in mind, in this connection, that when the defendant company claimed that the policy had lapsed because the premium was paid on August 1st, instead of July 30th, and flatly refused to retain it and insisted upon returning it to the plaintiff, that it thereby waived any further tender of premiums and that by such conduct on its part it relieved the plaintiff from making another tender of subsequent premiums, without notice that they would be received. *MacMahon* v. *United States Life Insurance Co.,* 128 *Fed. Rep.* 388; 68 *L. R. A.* 87.

Under this posture of affairs, we think, the other ground advanced, by the defendant, in support of the judgment of nonsuit and now for the first time urged before us, that the failure of the plaintiff to present to the company proofs of death of the insured under this particular policy, precluded her from a recovery thereon, is wholly without any merit.

The company denied the legal vitality of the policy. It claimed that the policy had lapsed. It refused to receive any premiums. From the time it refused to receive the June premium it treated the policy without any binding force. Having repudiated all liability on the policy it follows, as a logical sequence, that a proof of death thereunder would be of no avail.

The reasoning of Mr. Justice Bradley, in *Knickerbocker Life Insurance Co.* v. *Pendleton,* 112 *U. S.* 696, is applicable

to the situation of the present case.    On page 710 this learned jurist says: "The preliminary proof of loss or death required by a policy is intended for the security of the insurers in paying the amount insured.    If they refuse to pay at all, and base their refusal upon some distinct ground without reference to the want or defect of the preliminary proof, the occasion for it ceases and it·will be deemed to be waived.    And this can work no prejudice to the insurers, for, in an action on the policy, the plaintiff would be obliged to prove the death of the person whose life was insured, whether the preliminary proofs were exhibited or not."

There is an element in this case that conclusively answers the defendant's contention regarding the absence of any proof of loss being presented to the defendant under this policy, and that is, that the insured held two other policies issued by the defendant company, under which proofs of the death of the insured were made, and therefore there does not appear to have been any substantial reason for a separate proof of death under this particular policy.    A reference to the clause in the policy under the caption, "when payable," which reads: "Immediately upon acceptance of satisfactory proof of the death of the insured during the continuance of this policy," makes the aim of this requirement too palpable to be misunderstood. · The object sought for is satisfactory proof of the death of the insured.    But that it would be necessary, in the first instance, where a company had issued ten policies on the life of the insured, unless the insurer demanded it, to provide ten separate proofs of death does not seem reasonable.    In the present case it was admitted by the defendant that it had notice of the death of the insured and that he was the same person of whose death proofs were furnished by the plaintiff under two other policies issued by the defendant on his life.

In the case of *Girard Life Insurance Co.* v. *Mutual Life Insurance Co.,* 97 *Pa. St.* 15, 24, the question received careful and able. consideration, and it was there decided that while it was competent for a company to contract with the assured, that in case they issue more than one policy on his life, separate proofs shall be furnished, under each policy, in case

of his death, there being no such contract in the policy, the provision of which was for the payment of the sum insured sixty days after due notice and proof of the death of the insured, no separate proof of death was necessary.

These views lead to a reversal of the judgment of nonsuit, and awarding a *venire de novo.*