## Continental Beneficial Association v. Holt.

(Decided January 18, 1916.)

### Appeal from Russell Circuit Court.

1. Insurance—Mutual Benefit Insurance—Beneficiaries and Benefits.— Where a beneficiary certificate provides that it shall become for- feited, and dues previously paid shall become the property of the Company upon default of the payment of any monthly dues upon the date they are due, but upon reinstatement of the member thereafter, benefits allowed by the certificate to the member shall be so allowed as if the certificate had been issued as of the date' of the reinstatement, this provision provides only for the benefits provided in the certificate for the member only, and does not apply to a death benefit going to the beneficiary upon the death of the member.

2. Insurance—Life Insurance—Rule as to Construction of Contracts. —It is the rule of courts in the interpretation of insurance poli- cies, or contracts, and particularly life insurance policies, to construe the language most favorably to the insured or beneficiary than to the insurer, and when the language can be construed so as to permit a recovery, or so as to defeat it, the former con- struction will be adopted.

C. C. BAGBY, CHENAULT HUGUELY, BAGBY & HUGUELY and LILBURN PHELPS for appellant.

JAMES GARNETT, N. H. W. AARONS and J. W. MEADOWS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On October 28, 1904, the American Beneficial Associa- tion, of St. Louis, Mo., in consideration of the payment to it of $1.50 per month, payable on the fifteenth of each month, issued to Alvin H. Holt, a certificate or policy which partakes of the nature of a life insurance policy, an accident policy, and a sick benefit policy, and also provides for old age benefits. It was agreed therein that upon the death of the insured (which in the certifi- cate is called the member), the company would pay to the appellee herein such a sum as might be due under the terms of the policy at that time, she being the wife of the member, Alvin H. Holt, and made the beneficiary of any funds which might become due and payable upon his death.

Some time in 1907, the American Beneficial Associa- tion, which issued the policy, was taken over by another

concern called the American Patriots, and it agreed to and did become bound to carry out all of the terms of the policy. On December' 30, 1911, the name of the latter company was changed from "American Patriots" to "Americans," or if not, the company with the latter name assumed all responsibility growing out of the policy; and it on November 22, 1912, reinsured all of its business, including the policy herein with appellant, Continental Beneficial Association, which latter concern agreed to and did become bound to carry out and execute all of the provisions of the policy.

On the tenth day of July, 1913, the insured, Alvin H. Holt, died. Proof of his death was made and forwarded to the appellant, but it declined to acknowledge any indebtedness or obligation to pay any sum in excess of $66.00 as is shown by its letter of Nov. 18, 1913. This suit was filed in the Russell circuit court on January 13, 1914, by the appellee, as the death beneficiary in the policy to recover of the appellant the sum of $800.00. Numerous answers and amended answers, and replies and amended replies, and continuous counter-pleadings down to surrebutters were filed, and upon the trial of the issues as finally made, a verdict was returned in favor of the appellee for the sum of $766.00, upon which judgment was rendered, and from which this appeal is prosecuted.

Numerous grounds for a new trial are relied upon, but in the view we take as to the construction and meaning of the policy and the various conditions thereof, as found both in its face and upon the back of it, we are convinced that the judgment is correct and will consider only the construction of the policy and its various conditions.

It is provided by the first clause in the policy that if the death of the member should occur within two years from the date thereof, only ten per cent. of the death claim fixed in the policy (which is $1,000.00) shall be payable, and as each succeeding year expires, there is added to this amount $100.00, and as the death of the insured occurred more than eight years from the issuing of the policy, the suit was brought for only $800. There are ten conditions in the face of the policy and nine upon the back of it, many of which refer to matters having no direct bearing upon this suit. In the ninth condition in the face of the policy, it is, among other things, provided: "That unless the monthly payments of $1.50

each shall be fully paid on or before the 15th day of each month," etc., the policy should become void and all payments theretofore made should become forfeited to the company, and in the same condition, the ones printed on the back of the policy are incorporated into and made a part of it. The eighth paragraph or condition on the back of the policy is in these words: "Paragraph 8. If at any time the holder thereof, by reason of non-payment of dues on or before the fifteenth of each month, during the pendency of any claim for benefits or otherwise, allows his certificate to lapse, said member may be reinstated under said certificate, if he so desires, provided he is in good health and free from injury on date of said reinstatement, subject to the approval of the medical director of the association of the member's written application for reinstatement, and it is understood and agreed that the acceptance by the association of delinquent dues does not entitle the member to benefits of any kind the cause of which arose during such delinqency, nor if occurring on the day of reinstatement, and that in case of such reinstatement benefits shall accrue solely on the same terms as though a new application has been made and a new certificate issued. No indemnity will be allowed for a greater amount than the monthly salary or income of the insured."

It appears that while each of the monthly dues of $1.50 had been paid by the insured to the time of his death, and he was not in arrears as to any of them, still upon occasions after the issuance of the policy he would be derelict in paying them on or before the fifteenth of each month, as required by the policy, and this was so as to the dues of June and August, 1912. In each instance after some correspondence, and the furnishing to the company then liable, by appellant of a certificate as to his good health, he would be restored, so to speak, as a member of the company, upon payment of the unpaid dues.

The last dereliction in this regard was in the month of August, 1912 (which was some three months before the appellant became obligated upon the policy as insurer). Some few days after the fifteenth day of the month, the insured sent to the "Americans," at Springfield, Ill., it then being liable as insurer, the dues for that month, which should have been paid on or before

the fifteenth, and in response to that letter, it mailed one to him, which is as follows:

"The American,

"Springfield, Illinois, August 19, 1912.

"A. H. Holt,
    "Jamestown, Kentucky.

"Esteemed Comrade:—

"Your letter enclosing money order for $1.50 for your August assessment received. As this was received at this office after the fifteenth day of August, and your insurance being in suspension at this time, we cannot accept it. I herewith return your money, together with a health certificate, which, if you will please sign and return, together with the current assessment and all back assessments, if any, we will place your membership in good standing, and your insurance in full force and effect.

"Kindly send these in at once, so that you may receive the benefits that your policy provides for, as your insurance will remain in suspension until this letter is complied with.

"Trusting that you will give this your prompt attention, and thus put your insurance in force at once, I beg to remain,

"Yours fraternally,
            "L. J. PULLIAM,
            "Secretary General."

Within a few days thereafter and on the twenty-second of August, the health certificate was furnished, the dues paid, and the membership of the insured was placed in "good standing," and his insurance "in full force and effect," in accordance with the promises in that letter.

As stated, upon no subsequent occasion was any default made in any payment. In one of the provisions of the policy it is stated that "all disability benefits paid the member shall be deducted from the death or old age benefit upon final settlement." Long previous to the death of the insured, he had been paid benefits accruing to him under the policy, $14.00 on April 4, 1905, and $20.00 on May 14, 1906, making a total of $34.00, and it is because a reduction of this amount was taken from

the $800.00 sued for, that the judgment was rendered for only $766.00.

It is the universal rule governing the interpretation of all insurance policies that the language shall be construed most favorably toward the insured and the beneficiaries therein, and if the language is susceptible of two constructions, one of which will enforce payment of the benefits, and the other would excuse the company, the former should always be adopted. Bacon on Benefit Societies, volume 1, section 179, 361; Aetna Insurance Co. v. Jackson, 16 B. Mon., 242; Phoenix Insurance Co. v. Spiers, 17 Ky., 285; American Acc. Co. v. Reigcart, 94 Ky., 547; Mutual Ben. Life Ins. Co. of Newark v. Dunn, 106 Ky., 591; Champion Ice Mfg. Cold Storage Co. v. American Bonding & Trust Co., 25 Ky. L. R., 239; Continental Insurance Co. v. Daniel, 25 Ky. L. R., 1501; Mutual Benefit Life Insurance Co. of Newark v. First National Bank, 24 Ky. L. R., 580; Fidelity & Casualty, etc. v. Hunt, 142 Ky., 30, and many other cases which could be cited.

In each case the doctrine is stated in practically the same language, but we will quote from only two of them. In the case of Mutual Benefit Life Insurance Co. v. First National Bank, *supra,* the rule and the strictness with which it should be observed, is tersely stated as follows:

"If the terms of a policy are capable of two interpretations equally reasonable, it is the general rule that the construction which is most favorable to the insured must be adopted. As it is the company that prepares the contract, the insured not being consulted with regard to the form thereof, all doubts in regard to its meaning must be solved against the company.

In construing the contract of the parties and their acts in connection therewith, the rule is to avoid a forfeiture when it may be fairly done." (16 Amer. & Eng. Enc. of Law, 2d Edition, 863).

This rule should be strictly applied in case of life insurance after the death of the insured, when his lips have been closed and he is disabled from explaining to the court how he was misled by the contradictory terms of the contract."

It is stated in the case of Fidelity & Casualty Co. of New York v. Hunt, *supra,* as follows:

"The test is, is the contract fairly susceptible of the construction which supports the plaintiff's claim. If it

is, although there may be another construction equally plausible, or even more satisfactory, it may be said to furnish such ambiguity as would require the courts to adopt that one which protects the assured. The rule is well stated in Noonan v. Bradley, 9 Wall., 394 (Law Ed. Book 19, p. 761), as follows: 'If there be any doubt as to the construction which should be given to the agreement of the intestate that construction should be adopted which would be more to the advantage of the defendant upon the general ground that the party who takes an agreement prepared by another and upon its faith incurs obligations or parts with his property should have a construction given to the instrument favorable to him. And on the further ground that when an instrument is susceptible of two constructions, the one working injustice and the other consistent with the right of the case, that one should be favored that standeth with the right.' "

This rule is sound and wholesome. The language employed is always that of the company. It is frequently never seen, read or observed by the insured, and in many cases is hidden away in obscure parts of the policy, and frequently in small and misleading print ready to be drafted and brought into service whensoever a demand is made on the company for its compliance with the contract. The law frowns upon these lurking defenses and refuses to permit them to have effect unless there is no other reasonably possible escape from an interpretation of the contract, which will allow their defensive application.

A part of clause 8, *supra,* is as follows: "And that in case of such reinstatement, benefits shall accrue solely on the same terms as though a new application had been made and a new certificate issued." It is insisted by the company that when the insured was reinstated in August, 1912, that the benefits provided for in the policy, including the death benefit of the appellee, should be measured by the gradation clause found in the face of the policy from the date of such reinstatement hereinbefore referred to. In other words, that this reinstatement created a new policy, or certificate, and that if the member died in less than two years from that date, only $100.00 is collectible by the beneficiary. It acknowledged this much due in this case, but insisted upon the $34.00 previously paid to the member for sick benefits

as hereinbefore seen as a credit on the $100.00, and acknowledged a liability of only $66.00. .

We might here pause to say that this action on the part of appellant is a construction of the language quoted adversely to its contention in this case; for if the contract became a new one at the time of the reinstatement thereof in August, 1912, there had been no sick or other benefits paid under the new contract, and consequently it had no right to deduct any sum from the $100.00.

It is in the attitude of claiming rights under the policy from the beginning and denying to the beneficiary the same privilege. It does not seem to be inclined to accept the old adage that "what is sauce for one, is sauce for another;" but waiving this, and keeping in mind the rule of interpretation hereinbefore referred to, it will be seen that the policy provides, as we have found, for *sick* benefits, *accident* benefits, *old age* benefits and *death* benefits. All of them, except the last one, are to be collected and enjoyed by Alvin H. Holt, the member; the last one is to be collected and enjoyed by his widow, the appellee, and in the very nature of things does not become due or collectible until the one who collects and enjoys all the other three kinds of benefits is dead. Manifestly, it is physically impossible for him to enjoy in any way the last benefit mentioned.

With these facts in mind, let us examine the meaning and scope of the word "benefits," as used in the clause hereinbefore copied. The language is: "And it is understood and agreed that the acceptance by the association of delinquent dues does not entitle the holder to benefits of any kind the cause of which arose during such delinquency nor if occurring on the day of reinstatement." Then follows immediately the clause previously quoted.

Analyzing the last clause taken from paragraph 8, we see that the denial of benefits herein mentioned is leveled at those benefits to which the "member" would be entitled; and furthermore, that the "member" shall, in case of such delinquency, not be entitled to any benefits "which arose during such delinquency, nor if occurring on the day of reinstatement." Clearly to our minds this language could not refer to a *death* benefit during delinquency, or to a *death* benefit "occurring on the day of reinstatement," but they are provisions referring to

benefits to which the *member* would be entitled, and manifestly do not include *death* benefits. If the company had intended to include *death* benefits, it could have easily so stated in condition 8 thusly: "And it is understood and agreed that the acceptance by the association of delinquent dues does not entitle the member (or beneficiary) to benefits of any kind, the cause of which arose during such delinquency, nor if occurring on the day of reinstatement, and that in case of such reinstatement (such) benefits shall accrue solely on the same terms as though a new application had been made and a new certificate issued." By the insertion of the three words, which we have incorporated in parentheses, the meaning would be clear, and the defense herein made would have had an undoubted standing before the law, but without the use of them, their omission being no doubt due to long and patient study in preparing the form of contract, we can not now, when the company is called upon to respond, supply them for its use in defeating appellee's claim.

We conclude, therefore, that our interpretation of clause eight on the back of the policy, as to the character of benefits referred to herein, to which the member would be entitled if reinstated, is limited and confined to benefits thereafter accruing to the member, and refers only to one or the other of the benefits which he may enjoy under the policy, namely *accident* benefit, *sick* benefit, or *old age* benefit; and that it does not refer to or include *death* benefit, to which only the beneficiary is entitled after the death of the member.

It results from these views that the court should have instructed the jury peremptorily to have found for the appellee, but as the jury did this under the instructions which the court gave, the result is the same. These conclusions render it unnecessary to consider other questions presented.

The judgment is affirmed.