## FRANCIS v. INTERNATIONAL ·TRAVEL-ERS' ASS'N. (No. 9080.)

(Court of Civil Appeals of Texas. Dallas. March 15, 1924. Rehearing Denied April 12, 1924.)

1. Insurance ⬰152(1)—Policy must specify contingency insured against, and cannot be voided by repugnant by-law provisions.

·Vernon's Sayles' Ann. Civ. St. 1914, art. 4807, requires the contingency insured against to be definitely stated in the policy and in no other place, and a policy insuring against accidental death could not be avoided or affected by by-laws repugnant thereto in existence at the time of the application or subsequently adopted; insured's agreement to be bound by the by-laws being referable only to by-laws legally adopted.

2. Insurance ⬰152(1)—In absence of statute recitals in policy prevail over repugnant by-law provision.

In the absence of statute, recitals in a policy insuring against accidental death prevail over conflicting and repugnant by-laws incorporated in the policy by reference.

3. Insurance ⬰146(3)—Contract construed most strongly against insurer.

The language of an insurance contract should always be construed against insurer whose language it is, especially in the case of a life policy after insured's death, when his lips are closed.

4. Insurance ⬰455 — Test of ."accidental death" stated.

Injury is accidentally caused within a policy insuring against "accidental death," if the act preceding the injury, though intentional,

---

⬰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

produces something unforeseen, unexpected, and unusual.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident —Accidental.]

**5. Insurance ⬅543—Death from infection resulting from pulling tooth held "accidental death" "external, violent, and accidental means."**

Where infection, blood poisoning, and death, resulting from the pulling of a tooth by a dentist, was unusual, the death was accidental, and caused by external and violent means, within the meaning of insured's accident policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, External, Violent, and Accidental Means.]

**6. Evidence ⬅71—Presumed insurer received notice of death mailed.**

Proof of mailing notice of death creates the presumption that insurer received it.

**7. Insurance ⬅543—Proof of death under health policy held sufficient proof of death under accident policy.**

Proof of death, resulting from a dental operation, duly made under a health policy, *held* to be sufficient proof of death to satisfy the requirement of an accident policy in the same association, since it disclosed the essential facts of the accident and death, which was all that association was entitled to receive.

**8. Insurance ⬅539(3)—"Immediate notice" of accident is notice within reasonable time.**

Under an accident policy, requiring notice in writing to be sent immediately after the happening of the accident, "immediate notice" means notice within reasonable time.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Immediate Notice.]

**9. Insurance ⬅551—Objection to proof of death furnished must be timely and point out defects.**

If notice and proof of death are deemed insufficient by insurer, it should object in reasonable time, and point out defects so that proper proofs may be furnished.

**10. Insurance ⬅560(3)—Denial of liability based on grounds other than failure to furnish proof of death waives such objection.**

Insurer's denial of liability based on grounds other than the failure to furnish proof of death, is a waiver of any objection on such ground, irrespective of whether the denial precedes or follows the time within which proof should have been furnished.

**11. Insurance ⬅640(4) — Conclusively presumed that proof of death was made on insurer's failure to plead under oath that no proof made.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, declaring that it will be presumed that notice of claim has been given, unless want of notice has been specially pleaded under oath, on insurer's failure to plead under oath that no proof of death was made within the time stipulated, a conclusive presumption arises that proof of death was in fact made.

**12. Insurance ⬅640(4)—Policy provision, requiring proof of death within 91 days, held not available as defense, unless reasonableness pleaded.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, declaring that no stipulation in any contract, requiring notice of claim for damages as a condition precedent to the right to sue, shall be valid, unless the stipulation is reasonable, and making a stipulation providing for less than 90 days notice void, a policy provision requiring proof of death within 91 days after insured's death was not available as a defense to an action on the policy, where its reasonableness was not pleaded.

**13. Insurance ⬅622(2)—Stipulation requiring proof of death within 91 days held unreasonable.**

A stipulation of an accident policy, requiring proof of death within 91 days of insured's death, was not a reasonable time, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, since it did not provide for the contingency of minor children becoming claimants under the policy with the necessity of the appointment of a guardian, which requires several days.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by W. H. Francis, guardian, against the International Travelers' Association. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Lewis V. Greer, of Dallas, for appellant. Seay, Seay, Malone & Lipscomb, of Dallas, for appellee.

LOONEY, J. W. H. Francis, the uncle and legal guardian of Marvin Wilson Francis and Louise Wallace Francis, minors, aged 6 and 8 years, respectively, at the time of their father's death as hereafter stated, brought this suit against the International Travelers' Association on a policy or certificate of accident insurance, issued to Marvin Lee Francis, to recover the sum of $5,000, the amount stipulated to be paid these minor children on the accidental death of their father.

The case was tried in the Sixty-Eighth judicial district court of Dallas county without the intervention of a jury, and resulted in a judgment against the plaintiff. The case is properly before us on appeal.

The facts are these: Appellee issued to Marvin Lee Francis, on April 4, 1910, its policy or certificate of membership No. 5735 (accident insurance) for $5,000, payable to his wife, Bessie D. Francis, in case of his accidental death; the wife and mother of the children Marvin Wilson and Louise Wallace Francis having died, they were regularly substituted in the contract as beneficiaries, and are, as such, entitled to whatever benefits accrued under the policy by reason of the death of their father.

On February 17, 1920, appellee also issued

to Marvin Lee Francis a certificate or policy No. 4300, being health insurance only. Both of these policies were in full force and effect at the time of the death of the assured, which occurred on June 26, 1920, under the following circumstances: On June 17, 1920, the insured had a wisdom tooth extracted by a dentist in the city of Dallas. Infection from the operation resulted in Ludwig's angina, from which he died. Infection was an unforeseen, unexpected, and unusual result in such cases, and Ludwig's angina was unusual, unforeseen, and unexpected in such cases, and death from this or these causes was unforeseen and an unusual result.

The infection was caused either by the entrance of germs on the dental instruments used or from cotton used by the dentist in his treatment or from some other means; at all events, germs found their way into the tooth socket, did their deadly work, producing the unusual, unlooked for, and unforeseen result, death.

The pertinent provisions of the policy will hereafter appear in the discussion.

The application for membership contained, among other, the following:

"I do also agree that, if accepted as a member of the International Travelers' Association, that the benefits to be paid shall be those only which may be provided in the by-laws in force and effect at the time any accident occurs. I agree to comply with all requirements of the by-laws of said association as they now exist or may be hereafter amended."

At the time the deceased became a member of the association, the following were among the by-laws then in force:

"This association shall not be liable to any person for any indemnity or benefit * * * resulting from * * * death * * * from an accident to a member, which shall happen on account of or * * * from mechanical, medical or surgical treatment (operation made necessary by the particular injury for which claim was made and occurring within ninety days from the date of the accident excepted) or from local or general infections or joint inflammation, except when such infections or inflammations result from a visible open wound caused by external, violent, and accidental means."

The following by-laws were in force at the time of the death, but were adopted subsequent to the issuance of the policy:

"Whenever a member of this association in good standing shall, through external, violent, and accidental means, receive injuries which shall, independently of all other causes, result in his death within ninety days from the date of said accident, and notice in writing of said accident (not the result) has been received in the office of the association within the time required by the by-laws, the beneficiary designated by said member, if living, if otherwise, the legal representatives of said member, shall be paid the sum of $5,000, subject to the provisions hereinafter named."

Also the following by-law adopted after the issuance of the policy was in force:

"This association shall not be liable to any person for any indemnity or benefit for * * * death * * * which shall happen on account of * * * or from mechanical, medical, or surgical treatment (operation made necessary by the particular injury for which claim was made and occurring within ninety days from the date of accident excepted), * * * or from local or general infections (unless the infection is introduced into, by or through an open wound, which open wound must have been caused by external, violent, and accidental means, and be visible to the unaided eye."

On July 2, 1920, 6 days after the death of Marvin Lee Francis, appellant wrote and duly mailed to appellee the following letter:

"My brother died June 26th. He had a wisdom tooth pulled on the 17th of June, immediately developing blood poisoning that confined him until the time of his death. I find in his lock box that he held policy No. 4300 in your association. As I read the policy, his two minor children are entitled to the proceeds accruing by virtue of said policy. Please furnish me necessary papers to make proof of facts that may be required by you incident to same."

The presumption is, and we so find, that appellee received the notice in due course of mail on or about July 3, 1920. Not hearing from this letter, on July 20th appellant again wrote the association, requesting necessary papers to make claim on behalf of the minor children under the health policy. In reply to this letter, appellee, on July 21, 1920, wrote appellant, giving specific directions in regard to making out proof of death. Appellant furnished the proof, which was received by the association July 23, 1920, and, upon its receipt, the association paid the accrued benefits under the health policy.

On February 3, 1921, appellant wrote appellee, in substance, that under date of July 2, 1920, he notified them of the death of his brother and the cause; he also called their attention to the fact that he held policy No. 5735 for $5,000, the policy sued on, and requested papers for making proof of death; he also called attention of the association to the fact that he had furnished proofs of death in connection with the health policy above mentioned.

In reply to this letter of the appellant, the appellee, on February 4, 1921, answered, denying any liability whatsoever under the contract. In reply to this denial of liability, appellant wrote appellee on February 5, 1921, and again on March 23, 1921, insisting that appellee was liable, and requesting that the necessary papers be furnished upon which to make out proof of death, in case proof was required, and, in this connection, called attention to the fact that proof of death had theretofore been furnished in connection with the health policy, concluding the cor-

respondence by requesting a definite answer within a few days as to whether or not the claim would be recognized and a statement of reasons for declining the claim, if it should be declined.

It seems that the letter of March 23d was transmitted to its attorneys for reply, who, under date of March 24th, wrote appellant as follows:

"As per your request, we took up with the officers of the association the disposition of the above claim, and they have also referred to us your letter of March 23d, a copy of which was sent to the writer. They request us to advise you that, in view of the fact that they do not deem themselves legally liable, they decline to entertain the claim."

This ended the negotiations, and the suit was soon thereafter filed.

The evidence shows that dentistry, or the pulling of teeth, is a branch of surgery, and is generally recognized as surgical treatment.

It was agreed that on June 17, 1920, the date on which the tooth of Marvin Lee Francis was extracted, and on June 26, 1920, the date of his death; there were more than 3,000 members of appellee association, and that on the dates named, and at the time the stipulation was made, October 3, 1922, the association had in its reserve more than $6,000.

Appellant's contention is that the policy issued to Marvin Lee Francis insured against accidental death, and that any provision of the by-laws that purport to limit, contradict, modify, or nullify the contingency insured against is illegal and invalid and that the policy will prevail over any such inconsistent or conflicting provision.

Answering this contention appellee says that the insured agreed to be bound by the by-laws of the association then in force or that might thereafter be adopted, and as these insured against death through violent, external and accidental means, and provided that the insurer would not be liable for death resulting from mechanical, medical, or surgical treatment, nor for death resulting from local or general infection, unless the infection was introduced into, by, and through an open wound, caused by external and accidental means, and, as the facts show that the death of the insured was the result of medical, surgical, or mechanical treatment, or that he received, as the result of such treatment, an infection, which caused blood poisoning resulting in death, from a local or general infection not introduced into, by and through a wound caused by external, violent, and accidental means, that the death was not covered by the contract.

[1] It is very evident that the contingency described in the policy as accidental death is not the contingency described in the by-laws; that there exists a repugnance and an irreconcilable conflict, and this presents for our determination the question, Which shall prevail, the policy provision or the provisions of the by-laws?

The subject of insurance was deemed by the Legislature of such public concern as to justify the establishment of the department of insurance and the creation of a commission, to whom was committed the power to prescribe all fire insurance rates; not only so, but power was given the commission to prescribe the form, which means, of course, the terms, conditions, and the very language of policies. Vernon's Sayles' Ann. Civ. St. 1914, arts. 4876, 4876a, 4879, 4886, 4890, 4891, 4892, and 4893. In regard to life insurance, the statutes prescribe very definitely what the policy or contract of insurance shall and shall not contain. Articles 4741, 4742. In regard to fraternal beneficiary associations, the statute requires that the certificate shall contain certain provisions (article 4834); and further, as to life insurance, it is required that every contract or policy shall be accompanied by a written photographic, or printed copy of the application for such insurance, as well as a copy of all questions asked and answers given. Article 4951.

The abuses and injustices that provoked this legislative action were so glaring as to often call forth severe condemnation from the courts, such as lurking provisions in small type in policies and applications, or in some document which, by reference, was made a part of the policy, or found in some obscure provision of the by-laws of fraternal or co-operative companies. Provident, etc., v. Puryear's Adm'r, 109 Ky. 381, 59 S. W. 15, 16; Insurance Co. v. Slaughter, 12 Wall. 404–407, 20 L. Ed. 444; Continental, etc., v. Holt, 167 Ky. 806, 181 S. W. 648–650; Meyer v. Queen Ins. Co., 41 La. Ann. 1000, 6 South. 901. By such deception the assured was often led to believe that he was insured and that his beneficiaries were protected. After death, however, these obscure provisions were dug up and brought forward to defeat recovery. These, among other considerations, moved the Legislature to prescribe in one form or another the contents of the policy contract.

As stated in the case of Provident, etc., v. Puryear's Adm'r, supra:

"The purpose of the Legislature was that the assured might know from his policy what his contract was, and that contracts not contained in the policy, or written upon the back of it or attached to it, should not be considered, in order to avoid imposition by agents eager to earn commissions, and to avoid the litigation incident thereto after the death of the assured, when his tongue had been forever silenced, and any explanation he might have made could not be told."

In harmony with this legislative policy, chapter 5, title 71, under which appellee was organized, and from which it derives its authority, provides in article 4807 as follows:

"Every policy or certificate issued by any such corporation shall specify the sum of money which it promises to pay upon the contingency insured against, and the number of days after the receipt of satisfactory proof of the happening of such contingency at which such payment shall be made; and, upon the happening of such contingency such corporation shall be liable for the payment of such amount in full at the time so specified, subject to such legal defenses as it may have against same."

Thus it appears that this statute provides that each policy or certificate issued by appellee "shall specify" (a) the sum of money which it promises to pay, (b) the contingency insured against, and (c) the number of days after receipt of satisfactory proof of the happening of such contingency at which such payment shall be made.

Applying this statute to the facts, we are able to readily determine the nature of the contract under consideration. The pertinent provisions of the policy are as follows:

"There shall be payable * * * in the case of accidental death of said member, there shall be payable to Bessie D. Francis, wife of Marvin Lee Francis, if living at the time of such accidental death (on the death of the wife, the beneficiaries were changed to Marvin Wilson and Louise Wallace Francis, the minors) otherwise, to the legal representative of said member, in such manner as provided in the by-laws of said association after the receipt by said association of satisfactory proof of the happening of said accidental death, the sum of $5,000. * * * "

Following the signatures of the president and secretary of the association to the policy, among other matter printed on the second page of the policy appears the following:

"Important.

"Remember the by-laws and all amendments thereto are a part of your contract. Notice in writing must be sent the secretary immediately after the happening of the accident. Claim for death benefit must be presented to the association within thirty days after the death, together with full proof of death and of the particulars of the accident claimed to have caused death. This certificate does not cover injuries or death resulting from inhaling gas, taking of poison, contact with poisonous ivy, intentional injuries resulting fatally or otherwise inflicted by the member himself while sane, or insane, or by any other person (assault by burglar and highway robbers excepted). There are several other exceptions in the by-laws."

Thus we see that the contract specified $5,000 as the sum of money to be paid, and the contingency insured against was the accidental death of the assured. It was further provided that notice in writing must be sent the secretary immediately after the happening of the accident, and claim for death benefit must be presented to the association within 30 days after death, together with full proof of death and of the particulars of the accident claimed to have caused death.

It was evidently the intention of the Legislature, expressed in article 4807, to require the contingency insured against to be definitely stated in the policy and in no other place. This is the meaning of the statute as construed by the Supreme Court in Pledger v. Business Men's Accident Ass'n (Tex. Com. App.) 228 S. W. 110. The court in that case, in the course of the opinion, used the following language:

"Every policy issued by the association is required by the act to specify the sum of money which it promises to pay upon the contingency insured against, and the number of days to expire after the receipt of satisfactory proof of the happening of said contingency before such payment is due. Article 4807, R. S. 1911. Manifestly the policy provisions relating to policy coverage were framed in compliance with the statutory requirement, the policy stating the sum to be paid as $5,000; the number of days after receipt of the proof of the happening, ninety; and the contingency insured against, accidental death. While the statute does not require in terms that the contingency insured against be specified in the policy, yet in construing the entire insurance contract in the light of the statute, the inference is strong that the coverage was $5,000 for accidental death."

It will be borne in mind that this statute (article 4807) requires the policy to state, not only the contingency insured against but also to specify the sum of money which is promised to be paid on the happening of the contingency. If, therefore, a by-law should specify a sum to be paid on the contingency other than the sum mentioned in the policy, it would present the same question we now have; that is, as to the supremacy of the policy or by-law.

Responding to this identical question, Judge Jenkins, in Travelers, etc., v. Branum (Tex. Civ. App.) 169 S. W. 389-391, after quoting article 4807, said:

"' * * * Such corporations shall be liable for the payment of such amount in full.' What amount? The amount specified in the policy, which it promised to pay upon the happening of the contingency insured against. We think it clear, under this statute, that, if the association is legally liable for any sum, it is for the full amount specified in the policy, and that this cannot be avoided by any by-law fixing any other or different amount upon any contingency whatever." (Italics ours.) Citing Courtney v. Mutual Aid Ass'n, 120 Mo. App. 110, 94 S. W. 768, 101 S. W. 1098.

The Supreme Court reversed the Branum Case, supra, but its reversal did not in any sense affect the soundness of the reasoning of Judge Jenkins.

Bearing in mind, therefore, the purpose of the Legislature in assuming as a public function the regulation of the business of insurance, and its definite purpose to prevent

fraud and deception by requiring insurance contracts to be made certain, in the light of these adjudicated cases we are of the opinion, and so hold, that the contract under consideration insured against the contingency of accidental death; that this provision of the policy cannot be, and is not, avoided or any manner affected by the by-laws of appellee in existence at the time of the application or subsequently adopted.

The agreement on the part of the insured to be bound by all by-laws in force or subsequently adopted referred only to legal by-laws such as the association had the right to adopt. This distinction is brought out by Judge Fly in Eaton v. International T. A. (Tex. Civ. App.) 136 S. W. 817, where he says:

"When appellant contracted for by-laws, enacted in the future, to enter into and become a part of his contract, he must have had in contemplation only such by-laws as a corporation has the power to pass; that is, such by-laws as were reasonable and consistent with the rights guaranteed to him by the statutes of his state. He could never have contemplated that the association would attempt to repeal a statute and deprive him of a valuable statutory right."

Appellee was authorized by the law of its creation to adopt by-laws on various subjects, such as with reference to salaries of officers, annual meetings of members, collection of assessments, creation of a reserve fund, the mode of payment of assessments or death losses or benefits, and with reference to changing beneficiaries, but it is nowhere provided in the act, either by express terms or by implication, that by-laws may be adopted that change, modify, or amend the contingency insured against.

[2] If, however, the question came to us for decision, free from statutory regulation, we would nevertheless be compelled to hold that the provision of the policy in regard to the contingency insured against would prevail over conflicting and repugnant by-laws. This doctrine seems to be well settled by the authorities.

In McCoy v. Northwestern Mutual, etc., 92 Wis. 577, 66 N. W. 697, 47 L. R. A. 684, the Supreme Court of Wisconsin said:

"While the decisions are not numerous on this subject, there is no substantial conflict, and we understand the general principle to be firmly established that though, generally speaking, a member of a mutual benefit association or insurance company is bound to take notice of its by-laws, even if not recited or referred to in the certificate of membership or policy, yet, when such certificate or policy and the by-laws conflict, so long as the contract as written is within the power of the association under its charter or articles of organization, it will prevail over the by-laws, and by it the rights and liabilities of the parties must be determined"—citing Niblack, Ben. Soc. § 147; Laker v. Royal United, etc., 95 Mo. App. 353,

75 S. W. 705; Morrison v. Wis., etc., 59 Wis. 162, 18 N. W. 13; Failey v. Fee (Md.) 34 Atl. 839, 32 L. R. A. 311, 55 Am. St. Rep. 326; Greenlaw v. Aroostook, etc., 117 Me. 514, 105 Atl. 118; Olinsky v. Ry. Mail Ass'n, 182 Cal. 669, 189 Pac. 835, 14 A. L. R. 784; Gray v. Nat'l Ben. Ass'n, 111 Ind. 531, 11 N. E. 477; Luthe v. Farmers' Mut. Fire Ins. Co., 55 Wis. 543, 13 N. W. 490.

[3-5] Our next question is, did Marvin Lee Francis meet an accidental death within the meaning of the policy? In considering this question, we will be guided, when necessary, by the universal rule governing the interpretation of all insurance contracts; that is to say, the language of such contracts shall be construed most favorably towards the insured and the beneficiaries, and, if the language is susceptible of two constructions, one of which will enforce payment and the other excuse the company, the former should always be adopted. This results from the fact that the company prepares the contract, the assured is not consulted, hence all doubts as to its meaning must be resolved against the company, and especially is this true in the case of a life policy after the death of the insured when his lips are closed. Continental, etc., v. Holt, supra, and numerous authorities there cited.

To the same effect is the language of Judge Taft, present Chief Justice of the United States Supreme Court, in Mfgs. Accident, etc., Co. v. Dorgan, 58 Fed. 945–956, 7 C. C. A. 581, 22 L. R. A. 620, as follows:

"It is a well-settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company, strongly against the company. Policies are drawn by the legal advisers of the company, who study with care the decisions of the courts, and, with those in mind, attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore, which courts have adopted, to resolve any doubt * * * in favor of the insured and against the insurer."

Also, see the case of Jefferson Standard Life Ins. Co. v. Fannie Lee Baker, 260 S. W. 223, decided by this court on March 1st, this year, not yet [officially] reported.

The case under consideration is not unlike other cases that have been decided by our courts, as well as by courts of other states, where deaths occurring under substantially similar circumstances were held to be accidental and from accidental means.

The evidence in this case shows that infection, blood poisoning, and death, resulting from the pulling of a tooth, is an unusual, unexpected, and unlooked for occurrence.

The following seems to be the test: If the act which precedes the injury, though intentional, produces something unforeseen, unexpected, and unusual, the injury is accidentally caused.

Chief Justice Phillips, who wrote the opinion for the Supreme Court in Bryant v. Continental, etc., 107 Tex. 582, 182 S. W. 673, Ann. Cas. 1918B, 517, said:

"The defense of the casualty company is that sunstroke is a disease, and therefore not an accidental happening; that as a disease it was named as a risk of the policy; and that no indemnity is due for death resulting from it, under the policy, unless the preceding exposure be itself the consequence of an accident. This is the construction, in other words, which the company insists should be given the term, 'due to external, violent, and accidental means.' * * * Upon the admitted facts, was the sunstroke suffered by Perry, the assured, under this clearly stated general rule, an accident? It was, undoubtedly. He was at the time walking the streets in the ordinary way, unconscious of any danger from the heat of the sun, as is to be plainly inferred from the stated facts, with apparently no apprehension of injury from that source, and a sunstroke suddenly befell him. True, his exposure to the sun was voluntary, but that does not conclude the question. Though the exposure be regarded as 'the means' of his injury—to our minds an erroneous view—and as purely voluntary, it cannot be said that the result was one following 'in a not unusual or unexpected way' from such means. On the contrary, in the course of the exposure, the act immediately preceding the injury, the sudden prostration occurred, not the usual happening under such circumstances in common experience, but having forcibly in its event the elements of 'something unforeseen, unexpected,' and out of the ordinary course.

"In the Barry Case, the jump of the assured, which constituted the act immediately preceding his injury and occasioned it, was likewise voluntary and intentional. It was 'the means' of the injury. But the court repudiated the proposition that, because of its having been voluntary, the resultant injury could not be regarded as due to an accident. It was held to have been an accident, notwithstanding the voluntary nature of the act which caused it, for the reason that it was an unforeseen result, following, not naturally from the act, but in an unusual and unexpected way. * * * A large number of injuries, plainly accidents, are suffered in the performance of intentional acts. Whether the immediately preceding act was intentional is a mistaken test of the question. The proper and true test, in all instances of voluntary action, is that defined in the Barry Case: If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected, and unusual occurs, which produces the injury, it is accidentally caused."

In the Pledger Case, supra, the Commission of Appeals held that Pledger died, not only an accidental death, but a death from accidental means, caused by the intentional lifting of a bale of cotton, which produced an unexpected result, and, among other, used the following language:

"Regardless of whether the means by which death is produced be voluntarily employed, the result is due to accidental means, if in the act preceding the injury something unforeseen, unusual, and unexpected occurs which produces the result."

A case directly in point is that of Horton v. Travelers' Ins. Co., 45 Cal. App. 462, 187 Pac. 1070, in which the court said:

"The circumstances attending the death of the insured, as disclosed by the complaint, appear to be substantially these: The death was the result of blood poisoning as the immediate cause; this blood poisoning was caused by the introduction of virulent germs into the body of the insured; these germs were on dental instruments; the infected dental instruments were used in the course of a dental operation that was had upon the insured shortly before his death; thus were the germs introduced into the body of the insured, and, as alleged, the presence of the germs upon the instruments was unforeseen, unintended, and unexpected by the insured or by any one else; the use of the instruments with the germs thereon was 'external, violent, and accidental.' * * * We are of the opinion that the unintentional introduction into the insured's system of virulent germs contained on what he supposed were clean and aseptic instruments constituted 'accidental means,' within the meaning of the policy; in other words, it may well be that the alleged 'accidental' feature of the case was an accidental and unsuspected infection of the dental instruments, or an accidental use by the dentist of the wrong instruments, as, for instance, the use of infected instruments accidentally and unintentionally commingled with his sterilized instruments or accidentally placed where none but his sterilized instruments were usually kept."

The case of Interstate, etc., v. Lewis, 257 Fed. 241, 168 C. C. A. 325, was where the insured punctured a pimple with an infected pin. The court said:

"There is no evidence or finding that deceased knew as a fact that the scarf pin was infected, and we are not prepared to decide that the knowledge as to bacterial infection has been so widely diffused that the deceased was bound to know that fact. * * * We are therefore of the opinion that the death of deceased was due to a bodily injury effected by external, violent, and accidental means."

In the case of Ætna Life v. Brand (C. C. A.) 265 Fed. 6, 13 A. L. R. 657, in closing an incision after an operation on insured for hernia, the surgeon punctured the deep epigastric artery with his needle, owing to the fact that such artery was not where it should be in a normal person; a blood clot was formed on the artery; the leg became gangrened, resulting in an amputation; and the court held "the injury * * * to have been 'effected solely through external, violent, and accidental means,'" within the terms of the policy, saying, "the thing that was unexpected and unusual in this instance was the perhaps congenital misplacement of an artery."

Another case very similar is that of Townsend v. Commercial, etc., Ass'n, 231 N. Y. 148, 131 N. E. 871, 17 A. L. R. 1001. In that case

the insured received septic poisoning as the result of a hypodermic needle; the poisoning resulted in his death. It was held "that the death of the insured was due to accidental means is too well settled by this court to require discussion."

In view of the undisputed facts of this case, and of the doctrine announced in these adjudicated cases, we have no hesitancy in holding that the death of Marvin Lee Francis was accidental and caused by external, violent, and accidental means.

[6, 7] On the question of giving notice and furnishing proofs of death, the trial court filed the following findings of fact and conclusions of law:

"I find that February 4, 1921, was the first time that any claim was made upon the defendant for benefits, if any, as the result of accidental death of said Marvin Lee Francis by virtue of the accident policy which he held in the defendant association, and was the first notice that the defendant had of any claim under said accident policy by virtue of the death of said M. L. Francis.

"From the above I conclude that M. L. Francis died an accidental death. I further conclude, however, that no such notice or proofs of death as required by the policy and by-laws were furnished the defendant within the time required thereby. I conclude that there is no liability on the part of the defendant, and that judgment should be entered in its behalf."

By appropriate assignments and propositions hereinafter noticed in detail appellant calls in question the correctness of these findings and conclusions of the trial court.

Appellee affirms the correctness of the action of the trial court in the following counter proposition:

"Where the evidence shows that the contract of insurance provides 'no death claim provided for in this section will be paid,' unless proofs of death be filed in the office of the association by the claimant within ninety-one days from the date of death,' etc., and the court finds that the death of the assured occurred on June 26, 1920, and that February 4, 1921, was the first time any claim was made upon the insurer for the benefits, if any, as a result of such death, then such a claim is not presented within ninety-one days from the date of death, and no liability exists on the part of the insurer."

The policy contains the following, among other, provisions:

"Notice in writing must be sent the secretary immediately after the happening of the accident; claim for death benefit must be presented to the association within thirty days after death, together with full proof of death and of the particulars of the accident claimed to have produced death."

The following by-law was adopted after insured became a member, and was in force at the time of his death, to wit:

"No death claim provided for in this section will be paid, unless proof of such death be filed

260 S.W.—60

in the office of the association by the claimant within ninety-one days from date of the death of said member; said proofs must include affidavits from the physicians who attended the deceased or the injury, or examined the body of the deceased after death, giving nature of injury, cause of death and treatment, if any; affidavit from beneficiary giving date of accident," etc.

If the by-laws requiring proof of death to be filed by the claimant within 91 days from the date of the death of the member is a valid and binding obligation, and if, in the status of the pleadings, the question of the giving of notice and proof of death was an issue in this case, which we do not believe, still, under the undisputed facts, it is our opinion that appellant substantially complied with the provision as to furnishing proofs.

It is undisputed that 6 days after the death of the insured, and 15 days after his tooth was extracted, appellant wrote appellee stating the fact, the date, and the cause of the death, and requested necessary papers to be used in making proof of these facts. There is a controversy in regard to the receipt of this letter, but, in our opinion, the presumption must be indulged that the association received the letter, for the reason that appellee did not offer sufficient evidence to rebut the presumption. 22 C. J. 99, § 40; Milwaukee, etc., v. Fuquay, 120 Ark. 330, 179 S. W. 497–499.

Appellant not hearing from his letter of July 2d, again wrote on July 20th in regard to the matter. The association received this letter, and the necessary papers for making proof of death were furnished. Proof of death was made out and filed with the association on July 23, 1920; thus the association, within the time mentioned, was in possession, not only of notice, but of proof of death disclosing all essential facts in regard to the accident and death. In our opinion the purpose of the association in stipulating for notice and proof of death was fully accomplished.

The purpose of notice, as said by the court in Fidelity, etc., v. Mountcastle (Tex. Civ. App.) 200 S. W. 862, " * * * is to convey knowledge, or to bring home to the one affected thereby, facts or information that will enable him to guard against fraud, to investigate the facts upon which the claim is based, or to prepare himself to satisfy, meet, or contest said claim."

[8] Immediate notice as mentioned in the policy means notice within a reasonable time. Young v. Railway, 126 Mo. App. 325, 103 S. W. 559. It is insisted by appellee, however, that these notices and the proof of death filed with the association were furnished by appellant under policy No. 4300, the health policy, and that no death claim was made under policy No. 5735, being the accident policy sued on, until February 4, 1921, more than

91 days after the death, and that, by reason of this failure, the insurer is not liable. The trial court seems to have decided the case in favor of appellee under this view, but, for reasons which will now be stated, we cannot assent to the correctness of the proposition.

All that appellee was entitled to receive on the score of notice and proof of death was to be apprised of the facts; this was accomplished in giving notice and furnishing proof under the health policy. No purpose could have been subserved by furnishing duplicate notices and proofs that was not subserved by furnishing proof under the health policy.

In Girard, etc., v. Mutual, etc., 97 Pa. 15–23, two policies were held with the company by the assured, but proof was made under only one. The Supreme Court of Pennsylvania, answering a similar contention to the one made here, said:

"It appears to have been assumed by the company and the court below that it was necessary for the plaintiff to have made separate proofs of death under the policy in suit, notwithstanding the admitted fact that such proofs had been furnished, which the company had accepted, and under which it had paid the $5,000 policy.

"It is undoubtedly competent for a company to contract with the assured, that, in case they issue more than one policy on his life, separate proofs shall be furnished under each policy in case of his death. There was no such contract here. The policy provides for the payment of the sum thereby insured, 'in sixty days after due notice and proof of the death of the said Edward Magarge.' Upon the death of the assured, the company were entitled to notice and due proof thereof. The plaintiff having once made such proof, there was no object in proving it again, and the company had no right to demand second proofs. The assured was dead, not under one policy, but under both; the fact had been communicated to the company, with the cause of death, and all the circumstances connected therewith they desired to know, and as to which it was important they should be informed. A demand that all this should be repeated, merely because two policies had been issued upon Mr. Magarge's life, is as unreasonable as it is foreign to the contract between the parties."

In the case of Bohles v. Prudential, etc., Co., 83 N. J. Law, 246, 83 Atl. 904, the insured had ten policies in the company; in that case the court said:

"The object sought for is satisfactory proof of the death of the insured. But that it would be necessary, in the first instance, where a company had issued ten policies on the life of the insured, unless the insurer demanded it, to provide ten separate proofs of death, does not seem reasonable."

Also, see Joyce on Insurance, vol. 5, § 3277.

We are of the opinion, therefore, and so hold, that, even if required to furnish immediate notice of the accident, and to file proof of death within 91 days, appellant, having furnished all of this data under the health policy, was not required to furnish duplicate notice and proof under the accident policy.

The record furnishes no explanation for the delay of appellant in bringing to the attention of the association his claim under the accident policy, but, under our view, this is immaterial, as appellee well knew of the existence of the accident policy, and the proof of death furnished was as much a demand for payment under the accident policy as it was under the health policy.

The Supreme Court of New York, in the case of Freeman v. National, etc., Soc., 42 Hun (N. Y.) 252, said:

"So, too, the furnishing of satisfactory proof of the death of the member to the society, according to the provisions of the certificate issued to him, should be held to be a demand for payment, and impliedly would also be a demand upon the company to procure the necessary fund by assessment if need be."

[9] Having received notice of the accidental death of its member, appellee owed a duty to these minor children. If in its view the notices and proofs furnished were not sufficient, it should have raised the proper objection. It did not do so, but remained silent until more than 91 days elapsed from the time of the death, and, when called upon to redeem its pledge and pay the death claim, denied liability altogether.

Judge Neill, in the case of Northern Assurance Co. v. Samuels, 11 Tex. Civ. App. 417, 33 S. W. 239, said:

"No principle seems better settled than that, 'where there are defects in the proofs of loss, whether formal, substantial, or, indeed, in any respect, which could have been supplied if specific objections had been made thereto by the underwriters, a failure on their part to object to the proofs upon that ground, or to point out the specific defect, or to call for the information omitted within a reasonable time, is considered a waiver, however defective, informal, or insufficient such proofs may be.' "

The court, in London, etc., v. Schwulst (Tex. Civ. App.) 46 S. W. 89, at top of page 92, said:

"The rule is that, when defective proofs of loss are furnished the company, it must, within a reasonable time, object to the proofs, and point out the defects, so that the assured may, if he so desires, amend the same, and cure the defects."

Also, see 4 Joyce on Insurance, § 3362; 2 May on Insurance, 469b; Ins. Co. v. May (Tex. Civ. App.) 35 S. W. 829.

[10] The denial of liability by appellee was based on grounds other than the failure to furnish proofs as is shown by its communication to appellant of date July 21, 1920. Can it now refuse to pay the death claim on the ground that proofs were not furnished according to the by-laws? We think not.

On this point the law is stated in 26 C. J. 406, § 522, as follows:

" * * * It is generally held that a denial of liability or refusal to pay not predicated on the failure to furnish proofs is a waiver of any objection on that ground, irrespective of whether the denial precedes or follows the time within which proof should have been furnished."

[11] There are other conclusive answers to the contention of appellee in regard to the failure to furnish proof of death within 91 days after the death of insured that arise from the provisions of Vernon's Sayles' Ann. Civ. St. 1914, article 5714, which are as follows:

"No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon shall ever be valid, unless such stipulation is reasonable; and any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void. * * * In any suit brought under this and the preceding article it shall be presumed that notice has been given, unless the want of notice is especially pleaded under oath."

This statute required appellee, if it sought to take advantage of and defeat recovery on the ground that notice of claim of death had not been filed within 91 days of the death of the assured, to specially plead the same under oath in order to raise the issue at all.

This it failed to do, as its plea was not sworn to. Hence, the conclusive presumption must be indulged that notice of the claim of death was in fact filed.

It was said in one case construing this statute:

"The appellant in this case did not plead the want of notice under oath, and the presumption that notice was given is conclusive, and any evidence in relation thereto was inadmissible." So. Kansas Ry. Co. v. Hughey (Tex. Civ. App.) 182 S. W. 364; St. L., B. & M. Ry. Co. v. Marcofich (Tex. Civ. App.) 185 S. W. 51; North Am. Accident Ins. Co. v. Miller (Tex. Civ.App.) 193 S. W. 757; St. Louis, etc., Ry. v. Honea (Tex. Civ. App.) 84 S. W. 268.

[12] Again it will be observed that article 5714 provides that any notice of a claim required by any contract as a condition precedent to sue shall never be valid, unless such stipulation is reasonable, and a stipulation for a less period than 90 days is pronounced void. In construing this provision in Taber v. Western Union, 104 Tex. 272, 137 S. W. 106, 34 L. R. A. (N. S.) 185, Mr. Justice Dibrell said:

"The purpose of the act was to fix a minimum period of ninety days from the time the cause of action arose in which notice of any claim for damages might be required by stipulation as a condition precedent to the right to sue, and to declare as matter of law the invalidity of any contract undertaking to fix a shorter time than ninety days in which such notice is required to be given."

[13] The by-law invoked by appellee stipulated for a period of 91 days. Was this a reasonable time as applied to the insurance contract in question? We think not. The time mentioned is just over the line of legal validity, and, in order for it to be considered reasonable in fact, the burden was upon appellee to plead and make proof of its reasonableness, which it neither did nor attempted. (See the cases cited just above.) The contract fails to make any reasonable provision for the contingency of minor children becoming claimants under the policy. These children, the beneficiaries and real owners of the claim, were 6 and 8 years of age, respectively, at the time of the death of their father; they could not act for themselves, but must act, if at all, through a legally appointed guardian. The necessary legal procedure incident to the appointment and qualification of a guardian, however expeditiously conducted, would consume several days, to say nothing of the usual and appropriate time after death devoted to funeral and other matters necessarily connected therewith. The idea here suggested is fully borne out by the following authorities:

In the case of Lemp Brewing Co. v. La Rose, 20 Tex. Civ. App. 575, 50 S. W. 460, the court was construing a limitation statute, and said:

"Another principle of construction was that a cause of action was not to be considered as having accrued when there was no person capable of suing, which was the case when an injury was done to the estate of a person after his death, and before the qualification of his legal representative."

In Munz v. Standard, etc., Co., 26 Utah, 69, 77, 72 Pac. 182, 185, 62 L. R. A. 485, at p. 489, 99 Am. St. Rep. 830, the court said:

"Where such a policy contains an agreement on the part of the insurer that, in the event of the death of the insured, the indemnity shall be paid to his legal representatives, the conditions subsequent as to notice and proof within a certain time must not, in the absence of express language to that effect, be held to apply to them. If they act without unreasonable delay, it is sufficient."

In the case of Globe Accident Ins. Co. v. Gerisch, 163 Ill. 625, 45 N. E. 563, 54 Am. St. Rep. 486, the policy in case of death was payable to a legal representative. The court said:

"The plaintiff did not become the 'claimant' until she had taken out letters of administration, and there was consequently no 'claimant' within seven days from the date of the injury. It is clear that this provision for notice within seven days cannot apply to her. It is applicable to the insured only, and not to his legal representative. No other construction of it is reasonable. Moreover, this clause in the policy is for a forfeiture, and is in the form and phrases adopted by the company; and, if it is

of uncertain meaning, it must be construed most strongly against the company."

Also, see Provident, etc., v. Baum, 29 Ind. 236.

We are of the opinion, therefore, that the stipulation for 91 days in the contract in question, in the absence of any pleading or proof on the part of appellee as to its reasonableness, and in view of the undisputed facts, is shown to be unreasonable and void; hence the contract is before us denuded of any stipulation whatever requiring notice of claim of death as a condition precedent to the right to sue.

In harmony with the views expressed in this opinion, the judgment of the trial court is reversed and rendered in favor of appellant guardian against appellee for the sum of $5,000, with 6 per cent. interest thereon from October 22, 1920, and all costs of this and of the court below.

Reversed and rendered.